```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF MISSOURI
                   EASTERN DIVISION
```

A.B.S., et al.,                      )
                                     )
            Plaintiffs,              )
                                     )
   v.                                ) No. 4:12-CV-202-JCH
                                     )
JASON STOCKLEY, et al.,              )
                                     )
            Defendants.              )


**TELEPHONIC MOTION HEARING**

BEFORE THE HONORABLE JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE

MARCH 1, 2013


**APPEARANCES:**

For Plaintiffs        Albert S. Watkins, Esq.
                      Michael Schwade, Esq.
                      **KODNER WATKINS KLOECKER WEIGLEY & BRISON**

For Intervenor        James W. Schottel, Jr., Esq.
Plaintiff             **SCHOTTEL & ASSOCIATES, P.C.**

For Defendants        Dana W. Tucker, AAG
                      **ATTORNEY GENERAL OF MISSOURI**


*REPORTED BY:*        *Gayle D. Madden, CSR, RDR, CRR*
                      *Official Court Reporter*
                      *United States District Court*
                      *111 South Tenth Street, Third Floor*
                      *St. Louis, MO  63102*
                      *(314) 244-7987*

```
                                                                  2
 1        (Proceedings started at 3:05 p.m.)
 2              THE COURT:  Can you all hear me?
 3              MR. WATKINS:  Yes.
 4              THE COURT:  Okay.  Great.  Why don't we -- why don't
 5   we take up this, the motion to intervene.  Do you want to do
 6   that first?  Is there any issue on that?
 7              MR. WATKINS:  Sure.  Jim, I believe that's your
 8   motion to intervene.  Just as by way of introduction, Judge,
 9   there is no -- there is no objection to the motion to
10   intervene by the -- by the Plaintiff.
11              THE COURT:  Yeah.  Any -- any --
12              MS. TUCKER:  There's no objection on --
13              THE COURT:  Can you speak up?
14              MR. WATKINS:  Ms. Tucker, do you want to repeat what
15   you just said?
16              MS. TUCKER:  Yes.  There is no objection to the
17   motion to intervene by the defense.
18              THE COURT:  Okay.  Great.  Well, then I'll go ahead
19   and grant this, so we can take care of that.
20              Okay.  Why don't we next then turn to the motion to
21   compel, and, Al, you want to go ahead with that?
22              MR. WATKINS:  Sure.  And, Judge, the issues that we
23   have here are relatively simple.  We have a situation where an
24   incident occurred.  We know that there has been the generation
25   of an in-dash video memorialization of the event, and we know
```

3

1 that that in-dash memorialization is in the possession of the
2 police department. We know that an OnStar audio
3 memorialization of the event has been generated and is in the
4 possession of the police department, and those are two of the
5 most important things that we're seeking, and the Board of
6 Police Commissioners is basically taking the position that
7 while they know they exist and while they know they are in the
8 possession of the police department, because they are in the
9 possession of the Internal Affairs Division of the police
10 department, they don't possess them, and that's -- that's not
11 only counterintuitive; it's a little bit problematic in that
12 as counsel who has had the privilege of representing police
13 officers and the St. Louis Police Officers Association for a
14 long time, I'm really intimately familiar with the records
15 that are maintained and kept by Internal Affairs and, more
16 importantly, obviously, fully cognizant of the fact that the
17 Internal Affairs Division is a part of the St. Louis
18 Metropolitan Police Department.
19 So all we are asking for is that to the extent that
20 the documents requested are in the possession of the
21 department, whether they be in the Internal Affairs Division
22 or otherwise, that they be turned over to the Plaintiff in
23 response to discovery.
24 THE COURT: Okay. And what's the response to that?
25 MS. TUCKER: Your Honor, this case is a little

4

1  complex because this case --

2      THE COURT:  Can you speak up a little bit?

3      MS. TUCKER:  Yes.

4      THE COURT:  Thank you.

5      MS. TUCKER:  The case is a little complex.  It's a
6  wrongful death case that was initially investigated at the
7  request of the U.S. Attorney's Office by the FBI.  At that
8  time, all the documents that we had were in the possession of
9  the FBI.  The FBI then decided that they weren't going to
10 prosecute on the case.  They did in fact turn everything back
11 over to IAD, but since that has happened and I think --

12     THE COURT:  Wait a minute.  We're having a lot of
13 trouble hearing you, and slow down a little bit.  I have a
14 court reporter taking this down.

15     MS. TUCKER:  Oh, I'm sorry.

16     THE COURT:  Yeah, yeah.  Go ahead.

17     MS. TUCKER:  All right.  In addition, once everything
18 was turned back over to IAD, it is now with the Department of
19 Justice for the investigation of potential criminal --

20     THE COURT:  Wait a minute.  I thought -- I thought
21 the U.S. Attorney's Office wasn't going to do anything with
22 it.

23     MS. TUCKER:  Right.  It's strange in that initially
24 when it was requested to be reviewed by the U.S. Attorney's
25 Office, they did come back with that conclusion, but now the

5

1  Department of Justice has inquired --
2          THE COURT:  Okay.  Washington, in other words?  Okay.
3          MS. TUCKER:  Yes.  So it's an attempt to avoid
4  impeding that investigation.  I mean that was my reason for
5  not turning over the production.
6          THE COURT:  Well, I think under a court order here --
7  it's relevant; nobody's arguing it isn't relevant -- that it
8  needs to be turned over, and I mean that's that.  You know,
9  the Justice Department can't stop a pending court case unless
10 you've got some other basis.
11         MS. TUCKER:  No, Your Honor, I don't have any other
12 basis.
13         THE COURT:  Yeah, I think they need to just turn it
14 over.  You know, I don't know how long, and I don't -- it's
15 probably the -- is it the Civil Rights Division maybe or
16 somebody like that?
17         MS. TUCKER:  I can't even --
18         THE COURT:  Yeah, I'm guessing it's something like
19 that, but, no, I don't think that's a basis, so I would just
20 tell them that -- I mean we can issue an order on it.  You
21 know, we'll put a docket text order that those items -- and
22 then we'll go over and see if there are any others here --
23 just be turned over.  I mean I don't know if some of this
24 stuff -- I mean maybe those videos and stuff can't be copied
25 or you want to see the originals, but they can certainly share

6

1  them, you know.

2          MR. WATKINS:  Well, yeah.  Your Honor, if I may, we
3  know that OnStar has a copy of the video.  We know that the
4  police department kept and maintained a copy of -- I'm
5  sorry -- of the audio.  We know that the police department
6  kept and maintained a copy of the audio after they turned over
7  information initially to the Department of Justice for review
8  by the U.S. Attorney's Office in St. Louis, and as a matter of
9  process or a matter of procedure with IAD, if they turn
10 anything over to the federal authorities, they always maintain
11 their duplicate copies of any records that needed to be
12 maintained for their own files, and one of the reasons why we
13 waited before pressing this was to provide the Department of
14 Justice and the U.S. Attorney's Office here in St. Louis the
15 opportunity to perform their investigation and to do what they
16 needed to do without having to worry or be concerned about any
17 information being garnered by the public eye until after they
18 had made their conclusions with respect to potential criminal
19 charges.

20         THE COURT:  Sure.

21         MR. WATKINS:  So -- and that was -- that was
22 respected entirely.  The same holds true for the video, and
23 then also, the same holds true for one other element of the --
24 of the request for production.  We know as a matter of
25 protocol that the Metropolitan Police Department for the City

7

1  of St. Louis has psychological testing done for its
2  candidates, and we know that that testing is done through
3  third party -- through a third party that provides the
4  expertise for the testing.  We know as a matter of protocol
5  simply because I've been involved with this before
6  representing police officers that the results of those tests
7  are kept and maintained by -- by the department, and what has
8  happened is the response to the request for that information
9  and for that documentation has been met with the assertion
10 that the police department doesn't keep it, but, rather, an
11 unnamed third party provider of the services keeps those
12 records when, in truth and in fact, we know that the
13 department keeps the records, but we also know that the
14 provider of the services keeps and maintains the records as
15 well.
16         So to the extent that the Defendant will want to
17 maintain the assertion that the department doesn't have any of
18 those test results, we simply ask that the name of that third
19 party provider be disclosed because we understand that it has
20 changed over the years from one provider to another depending
21 on when the tests were taken.
22         THE COURT:  Okay.
23         MS. TUCKER:  May I respond?
24         THE COURT:  Yes.  Go right ahead.
25         MS. TUCKER:  I have no problem turning over the name

8

1   of the independent party that would have those, those
2   documents, but when Plaintiffs' counsel requested those
3   documents, I requested them from my client, and that is what I
4   was told, and therefore, that's the way I responded to the
5   discovery.  I don't have a problem identifying the third party
6   that is in care, custody, and control of those documents.
7         THE COURT:  Okay.  Well, why don't we go through it
8   that way, turn that over, and then you can all, you know,
9   subpoena it from those people, and, you know, they may want --
10  and I don't -- I mean these are psychological evaluations you
11  may all want to protect.  Do we have a protective order here?
12        MS. TUCKER:  We do have a protective order in place,
13  Your Honor.  I can't recall whether it addresses that issue.
14        THE COURT:  Yeah, you all ought to talk about that
15  because, obviously, we'll be releasing some stuff that I
16  think --
17        MR. WATKINS:  Yeah, we have no problems with a
18  protective order on anything that pertains to the individual
19  officer, but we don't see any need for a protective order for
20  the video or for the audio.
21        THE COURT:  No, no, I'm not talking about that.  I'm
22  just talking about these psychological evaluations.
23        MR. WATKINS:  Right, right.
24        THE COURT:  I think at the present time that should
25  be under some kind of protective order, but why don't you, you

9

1   know, disclose the name of the third party, and then you can
2   subpoena from them.
3           MS. TUCKER:  All right.
4           THE COURT:  Why don't you do that, okay?
5           MR. WATKINS:  All right.  Wonderful, Judge.  The
6   remaining issues are, basically, copies of email
7   correspondence and documents concerning the allegations that
8   are set forth or that give rise to litigation as well as
9   documents concerning any revision or alteration to the
10  incident report, and that's very important.  Judge, all of
11  these are subject to the same objections where it is asserted
12  that IAD has possession of them and, therefore, they cannot be
13  produced, and the issue having to do with the revised
14  Metropolitan Police Incident Report is -- is vital because we
15  have come across, through members of the media and other
16  sources, at least two different versions of the narrative
17  corresponding to this incident report, and the -- the revision
18  from one version of the narrative to the next version of the
19  narrative is extraordinarily telling, and having been involved
20  in the IAD matters, I am familiar with a protocol that is
21  often followed which involves an officer being instructed to
22  provide a narrative.  They go literally to a computer screen,
23  type it up, print it off, and show it to a supervising officer
24  who then instructs on what revisions need to be made, and the
25  officer then goes back and makes the revisions, and

10

1 oftentimes, there are one, two, three, four, five, or more
2 drafts of these narratives that go into incident reports, and
3 the -- the supervisors that are involved are -- sometimes
4 there's one and sometimes there's more depending on the nature
5 and character and severity of the underlying incident giving
6 rise to the report.  And so what we've requested is a copy of
7 all iterations of that incident report which are maintained
8 and can be derived from the -- from the system on which the
9 reports are made.
10          THE COURT:  And the response?
11          MS. TUCKER:  Your Honor, once again, I --
12          THE COURT:  Can you speak up a little?  Can you speak
13 up a little?
14          MS. TUCKER:  Yes.  If a newer copy of the police
15 report does exist, I am not aware of that, and if they do
16 exist, I would imagine they would be with IAD, and if the
17 Court is ordering me to turn over the IAD file and the file
18 that we provided to the Department of Justice, those
19 documentations would be in that group of documents.
20          MR. WATKINS:  I would only ask that if that is
21 ordered that it make specific reference to all versions of the
22 police report, all drafts of the police report that were made
23 be -- be -- be produced.
24          MS. TUCKER:  As long as that's what your production
25 request asks for --

```
                                                                 11
 1            MR. WATKINS:  Yes, exactly.
 2            MS. TUCKER:  -- yeah, I don't have a problem with it
 3  if that's what the Court orders me to do and that's how your
 4  production request reads.
 5            MR. WATKINS:  Yeah.  It is all documents concerning
 6  any revision or alteration to St. Louis Metropolitan Police
 7  Incident Report CN11-070373.
 8            THE COURT:  Yeah.  Well, I'll go ahead and order
 9  that, and, you know, if there's numerous revisions and you
10  have those available, I mean if they are available, that's
11  fine; then they ought to be turned over.  Yeah, go ahead and
12  do that.
13            MR. WATKINS:  At times, it requires that the -- the
14  primitive version of the report on the computer sometimes --
15  sometimes there has to be some forensic work done on the
16  computer to get at it depending on whether they were saved or
17  not.
18            THE COURT:  Well, I think they ought to produce what
19  they have, and if you think there's some forensic work that
20  needs to be done, then I think you better get together because
21  if it's going to incur a cost, you may have --
22            MR. WATKINS:  Right, I understand, Your Honor.
23            THE COURT:  Yeah, yeah.  So I mean I think, first of
24  all, the Defendants ought to see what they've got that's
25  readily available, and then if you say, well, there might be
```

```
                                                              12
 1   some forensic information that needs -- work that needs to be
 2   done, then --
 3            MR. WATKINS:  Well, we were advised and led to
 4   believe that that forensic undertaking was pursued at the
 5   request of federal authorities last year.
 6            THE COURT:  Okay.  Well, in that case, maybe they've
 7   got it, but, yeah, see what you've got, but, no, I think you
 8   ought to go ahead and give over what you've got, yeah.
 9            MR. WATKINS:  All right.  And, Your Honor, that
10   encompasses the substantive scope of our motion to compel.
11            THE COURT:  Okay.  Is there anything else then?
12            MR. WATKINS:  No.  At this time, I will say it's been
13   a pleasure working for counsel for the Board.  She's been very
14   responsive and very forthcoming.
15            THE COURT:  Well, that's nice.  So I think we've got
16   it down that you'll go ahead and produce all these things as
17   we've discussed them in this conference?
18            MS. TUCKER:  Yes, Judge.
19            THE COURT:  Okay.  Great.  Thank you all very much.
20            MR. WATKINS:  Your Honor, thank you for your time.
21            THE COURT:  Thank you.
22            MS. TUCKER:  Thank you.
23        (Proceedings concluded at 3:19 p.m.)
24
25
```

                                                                13
                            CERTIFICATE


        I, Gayle D. Madden, Registered Diplomate Reporter and
Certified Realtime Reporter, hereby certify that I am a duly
appointed Official Court Reporter of the United States
District Court for the Eastern District of Missouri.
        I further certify that the foregoing is a true and
accurate transcript of the proceedings held in the
above-entitled case and that said transcript is a true and
correct transcription of my stenographic notes.
        I further certify that this transcript contains pages
1 through 12 inclusive.
        Dated at St. Louis, Missouri, this 19th day of March,
2013.


                                  _____

                                  /s/ Gayle D. Madden
                                  GAYLE D. MADDEN, CSR, RDR, CRR
                                  Official Court Reporter