IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| A.B.S, as surviving daughter of deceased ANTHONY L. SMITH <br><br> Plaintiff, <br><br> vs. <br><br> MAYOR FRANCIS SLAY, et al. <br><br> Defendants. | Case No.: 4:12-cv-00202-JCH |

**SUPPLEMENTAL MEMORANDUM OF MOVANTS
ST. LOUIS POST DISPATCH AND ROBERT PATRICK
IN SUPPORT OF MOTION TO RESCIND PROTECTIVE ORDER**

## I.   BACKGROUND

On December 20, 2011, Jason Stockley, then a St. Louis Police Officer, shot and killed Anthony Smith, a suspected drug dealer, after a vehicular crash following a high speed chase. Stockley claimed the shooting was justified because he believed Smith was reaching for a gun, and a gun was found in Smith's vehicle. Smith's defenders, on the other hand, claimed the shooting was unjustified and the gun possibly planted.

An investigation followed, many of the details of which remain unknown. This civil rights lawsuit also followed, during which Plaintiffs submitted discovery requests, including requests for production of investigative documents concerning the shooting ("Investigatory Files"). Among those documents was a video recording taken by the dash board camera of the police vehicle used by Stockley and his partner ("Dash Board Video").[1]

---

[1] At some point, the Post-Dispatch understands the Dash Board Video or an accompanying audio recording were technologically enhanced so that certain statements made by Stockley purportedly can be heard, including statements to his partner to crash into Smith's vehicle and a statement that he was "going to kill this _____, don't you know it." (See Exhibit A). When that enhancement occurred is unclear, but the Post-Dispatch understands that the enhanced recordings are included among the documents produced to the Plaintiff subject to the Protective Order.

2168675.1

On motion of the Defendants, the Court entered a Protective Order under which the Investigatory Files were produced to Plaintiffs but not to be disclosed outside the litigation. (Doc. #44). The premise for the Protective Order was Defendants' claim of a "pending internal investigation and potential criminal charges." (*Id.*).

In December 2013, this civil action settled. At Defendants' request, the Settlement Agreement and payment amount were sealed by the Court. (Doc. #83).

In the two years following the settlement, little seemed to happen. There were no public indications of any pending investigation or charges. Statements of the United States Attorney belied any ongoing investigation, at least by his office. State law enforcement officials would neither confirm nor deny whether any investigation was ongoing, at least not publicly. The notion of any investigation continuing so long after the shooting seemed unlikely.

Given this apparent inactivity, the Post-Dispatch sought disclosure of the Investigatory Files and Settlement Agreement from the St. Louis Police Department under the Missouri Sunshine Law. It received a response claiming the records were closed because of an ongoing investigation and a statutory exemption from disclosure under MO.REV.STAT. §610.110.2. Believing the materials to be in the possession of Plaintiff's counsel, who would be willing to release them,[2] the Post-Dispatch also filed the pending motion in this Court seeking rescission of the Protective Order and the sealing of the settlement. *See, e.g., Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 784 (3d Cir. 1994) ("It is well-established that a district court retains the power to modify or lift confidentiality orders that it has entered.").

---

[2] "It is implicit in Rule 26(c)'s 'good cause' requirement that ordinarily (in the absence of good cause) a party receiving discovery materials might make them public." *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 790 (1st Cir.1988). In fact, "parties to litigation have a constitutionally protected right to disseminate information obtained by them through the discovery process absent a valid protective order." *Oklahoma Hosp. Ass'n v. Oklahoma Pub. Co.*, 748 F.2d 1421, 1424 (10th Cir. 1984), citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984).

2

Since then, several things have happened. First, Plaintiff's counsel has consented to lifting the Protective Order and the seal. (Doc. #87). Second, each Defendant, other than Stockley, has likewise consented. (Doc. #89). This is significant as it is these Defendants ("Police Board Defendants") that hold and control the Investigatory Files at issue. Moreover, recognizing that the Missouri Sunshine Law §610.021.1 requires release of the Settlement Agreement, or at least the amount paid in settlement, the City of St. Louis, which now represents the Police Board Defendants, released the Settlement Agreement, leaving as a practical matter only the pre-settlement Investigatory Files at issue in these proceedings. Finally, on May 12, 2016, on a Complaint filed by the St. Louis Circuit Attorney, Stockley was arrested and charged with Murder in the First Degree. (See Exhibit A).

In its May 26, 2016 Order (Doc. #90), this Court took note of the events that followed the Post-Dispatch's Motion. Recognizing that consent to the Post Dispatch's Motion had been given by counsel representing the parties other than Stockley, it ordered the Post-Dispatch to notify Stockley's counsel of the proceedings.[3] Further, the Court provided all parties until June 27, 2016 to file briefs "addressing the impact of any recent developments on the part of the St. Louis Circuit Attorney's office with respect to this matter...." (Doc. #90).

## II. ARGUMENT

The Post-Dispatch based its Motion to Rescind the Protective Order on three things: (1) the passage of time since the shooting and investigation; (2) the lack of any criminal proceedings despite the passage of time which belied any claim of an ongoing investigation; and (3) the

---

[3] Stockley was represented in the civil suit by the Missouri Attorney General's Office, who received notice of the Post-Dispatch's request through the ECF-CM System and by regular mail and e-mail. However, the Attorney General's Office no longer represents him. Stockley is currently represented by Attorney Neil Bruntrager (See Ex. B), who the Post-Dispatch has notified of these proceedings in compliance with the Court's Order. (Doc. #91).

significant newsworthiness and public interest in the materials subject to the order. These circumstances, any one of them, eliminate the "good cause" that justified the original order.

The passage of time, alone, more than justifies rescission of the Protective Order. No "good cause" remains to effectively "gag" the parties to this civil suit from revealing what they know and the information they have about the shooting and the investigation that followed that lead to a nearly $1 million settlement. Though their First Amendment rights to disseminate materials obtained through discovery may be diminished, such rights still exist and should be considered. Here, Plaintiff has shown inclination to release the records, if the Protective Order were held for naught, and the Police Board Defendants, who possess the records, have consented.

Further, the "good cause" that justified the protective order was a claim of a then "pending internal investigation and potential criminal charges." (Doc. #44). That justification no longer exists, as charges have been filed. Accordingly, the order is no longer justified. *See, e.g., Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir. 2005) ("after the court enters [a protective] order there must be good cause to maintain the order in the face of a motion to vacate it, particularly when, as here, the moving party did not have an opportunity to oppose the entry of the protective order in the first instance.").

Moreover, the circumstances surrounding the shooting are highly newsworthy. "Performance of police duties and investigations of their performance is a matter of great public importance." *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997) (lifting confidentiality of police records regarding allegations of police torture); *see also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 788 (3d Cir. 1994) ("A factor which a court should consider in conducting the good cause balancing test is whether a party benefitting from the order of confidentiality is a public

4

entity or official. Similarly, the district court should consider whether the case involves issues important to the public.")

Here, a police officer shot a suspect multiple times after a police chase. A gun is found in the suspect's possession, but the origin of the gun is disputed. For nearly five years after the incident and three years after a sizeable settlement of a resulting civil suit, nothing happens. But then, based on claims of new-found or discovered inculpatory evidence, charges are filed. While any "new" evidence will not be available simply by rescinding the Protective Order (given that it presumably would not have been available for production prior to settlement), rescinding the Protective Order will result in release of those materials that existed early on. Release of those materials would be significant because it would permit a glimpse into what was known early on and allow the public to see what justification existed for not bringing charges then and to evaluate whether the present charges are simply the result of what has become known as a "post-Ferguson effect."

Finally, given the publicity that this case has already engendered, there is little likelihood that Defendant Stockley's fair trial rights will be seriously implicated by release of these four-year old materials. Moreover, the publication of these materials, being of a factual nature, are exactly the type of information that the Eighth Circuit has held is not likely to endanger fair trial rights. *See, e.g., Snell v. Lockhart*, 14 F.3d 1289, 1294 (8th Cir. 1994) (rejecting claims of prejudicial pretrial publicity because "the articles and broadcasts, though numerous, were fair, objective, and generally limited to a recitation of established facts."); *United States v. Faul*, 748 F.2d 1204, 1212 (8th Cir.1984), cert. denied, 472 U.S. 1027 (1985) (In considering claims of prejudicial pretrial publicity, a court "must distinguish between largely factual publicity and that which is invidious or inflammatory.").

5

## III.   CONCLUSION

For the reasons identified in the Post-Dispatch's Motion (Doc. #85), original Memorandum in Support (Doc. #86) and this Supplemental Memorandum, this Court should rescind the Protective Order, and enter the order suggested and consented to by the Police Board Defendants. (Doc. #89-1).

Respectfully Submitted,

LEWIS RICE LLC

By: /s/ Joseph E. Martineau
    Joseph E. Martineau, #32759MO
    Krista C. McCormack #68239MO
    600 Washington, Avenue, Suite 2500
    St. Louis, Missouri  63101
    Tel.: 314/444-7729; Fax:  314/612-7729
    Email: jmartineau@lewisrice.com

*Attorneys for the St. Louis Post-Dispatch and Robert Patrick*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 27th day of June 2016, a copy of the above and foregoing document was electronically filed and served via e-mail and U.S. Mail, postage prepaid on:

Albert S. Watkins
**KODNER & WATKINS**
7800 Forsyth Blvd, Suite 700
St. Louis, Missouri 63105
E-mail: albertswatkins@kwmwlaw.com

James W. Schottel, Jr.
**SCHOTTEL & ASSOCIATES, P.C.**
906 Olive Street
St. Louis, Missouri 63101
E-mail: jwsj@schotteljustice.com

Neil J. Bruntrager
**Bruntrager & Billings, P.C.**
1735 South Big Bend Blvd
St. Louis, Missouri 63117
E-mail: njbatty@aol.com

Michael A. Garvin
**CITY HALL**
1200 Market Street, Room 314
St. Louis, Missouri 63103
E-mail: GarvinM@stlouis-mo.gov

Robert J. Isaacson
**Attorney General of Missouri**
Old Post Office Building
P.O. Box 861
St. Louis, Missouri 63188
E-mail: robert.isaacson@ago.mo.gov

/s/ Joseph E. Martineau