UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| A.B.S., as surviving daughter of deceased ANTHONY L. SMITH, ) ) ) Plaintiff, ) ) v. ) ) MAYOR FRANCIS SLAY, et al., ) ) Defendants. ) | Case No. 4:12CV202 JCH |

### STATEMENT OF INTEREST OF THE UNITED STATES

COMES NOW, the United States, on behalf of the Federal Bureau of Investigation ("FBI"), by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Nicholas P. Llewellyn, and submits this Statement of Interest pursuant to 28 U.S.C. § 517[1] seeking an Order protecting the FBI's records from disclosure to the St. Louis Post-Dispatch in the event this Court grant's the St. Louis Post-Dispatch's Application Seeking Rescission of Protective Order Sealing Investigatory Files Produced in Discovery.

### BACKGROUND

Plaintiff previously sued the Board of Police Commissioners ("the Board") in Federal Court for civil damages. As a result, this Court ordered the Board to produce records concerning the criminal investigation to the Plaintiff, under seal and part of a Protective Order, which included FBI interviews and other audio/video enhancements. Neither the FBI nor the Office of the States Attorney was made aware that FBI records being turned over in third-party litigation

---

[1] Section 517 provides that "any officer of the Department of Justice[ ] may be sent by the Attorney General to any . . . district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

1

the United States was not a party. The St. Louis Post-Dispatch recently moved to unseal these records. In the event the records are unsealed, there is a likelihood that the St. Louis Post-Dispatch will release many of the records to the public.

The St. Louis City Circuit Attorney's Office ("CAO") filed a Motion to Intervene in this case on July 18, 2016 stating that it is "not a party in this matter and is therefore not privy to what information has been included in the 'investigatory files' referenced in the St. Louis Post-Dispatch's Application." [Doc. 95]   The CAO further stated that it has an ongoing criminal investigation in this matter and "requests that the Protective Order sealing Investigative Files and any physical evidence including recordings remain in effect until such time as the Circuit Court criminal case is resolved." [Doc. 95]   There can be no real dispute in this case that the FBI's records were compiled for law enforcement purposes during a criminal investigation.

### A.  The FBI Loans Federal Documents to the Circuit Attorney's Office

The FBI-generated investigative records were first provided to the United States Attorney's Office to determine if prosecution was warranted. The United States Attorney's Office declined prosecution. The FBI records and other investigatory material were later provided to the CAO, as there was and is a parallel criminal investigation proceeding under state criminal law. It should be noted that the FBI investigative materials were provided to the CAO under limited circumstances. All FBI Form 302s (reports of interview) are stamped "confidential" and contain the following language at the bottom of the document:

> **"This document contains neither recommendations nor conclusions of the FBI.  It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency."**

Upon information and belief, the FBI-generated materials are currently being relied upon by the CAO, in its official capacity to pursue criminal charges under state law. It is not known to the FBI

exactly how the FBI's records were disclosed in this civil matter.  In any event, the FBI and United States Attorney's Office were not provided an opportunity to dispute or approve the release of FBI records, or review and redact any portions of any federal records pursuant federal law.

### B. Federal Law Controls This Dispute.

Federal law provides the Court with clear guidance regarding how to handle the FBI's records.  Under federal law, a federal record is defined in a straightforward manner as any books or records made by an agency of the United States government.  44 U.S.C. § 3301.  A document "created at government expense, i.e., with government materials and on government time," is "indisputably the property of the Government." *Pfeiffer v. CIA*, 60 F.3d 861, 864 (D.C. Cir. 1995).  The physical location of the federal records does not control or determine the records' federal status.  *United States v. Red Lake Band of Chippewa Indians*, 827 F.2d 380, 383 (8th Cir. 1987) (tribal court records were federal records even when possessed by the tribal government, not the federal government); *Kissinger v. Reporters Comm.*, 455 U.S. 136, 157 (1980).

FOIA provides broad protection of records created for law enforcement purposes during criminal investigations.  *See* 5 U.S.C. § 552(b)(7); *F.B.I. v. Abramson*, 456 U.S. 615 (1982) (criminal investigation records are exempt from disclosure under FOIA even if the records are later compiled or used for non-law enforcement purposes); *Shaw v. F.B.I.*, 749 F.2d 58, 64 (D.C. Cir. 1984) (protecting FBI's records that investigated federal and state crimes as exempt from disclosure under FOIA because FOIA protects the FBI's ability to investigate either federal or state crimes); *White v. IRS*, 707 F.2d 897, 901 (6th Cir. 2001) (IRS audit records are protected from disclosure under FOIA as the "law enforcement" exception covers both criminal and civil proceedings).

Federal law does allow federal agencies to share federal records with state agencies like the CAO.  28 U.S.C. §534(a)(4) authorizes the "exchange such records and information with, and for

the official use of, authorized officials of the . . . States, cities, and penal and other institutions."  However, the exchange of records with state officials, as authorized by § 534(a)(4), is "subject to cancellation if dissemination is made outside the receiving departments or related agencies."  28 U.S.C. § 534(b).

Obviously, the relief the St. Louis Post-Dispatch seeks in this case when unsealing the protective order would cause dissemination of the FBI's records outside the state agency that received the records, namely the CAO.  The fact that the FBI's records left the St. Louis Field office is neither controlling nor dispositive.  Under federal law, a state or county employee's possession of federal records does not waive or destroy the federal status of the documents, or the ability of the federal government to recover the records.  *United States v. Story County, Iowa*, 2014 WL 2986460 (S.D. Iowa 2014) (fact that county employee used county e-mail system to receive federal records and disseminate the federal records to others does not change the records' federal status or act as a waiver of any federal rights to later protect and recover the federal records).

If innocent individuals are referenced in the federal records, the Government can protect their privacy under federal law.  *See* e.g. *Manna v. United States Dep't of Justice*, 51 F.3d 1158, 1166 (3rd Cir. 1995) (Court holding that witnesses involved in criminal investigations have a substantial privacy interest in non-disclosure of their names given the potential for embarrassment and harassment even when criminal investigation is completed); *Black v. Sheraton Corp. of America*, 564 F.2d 531, 545-46 (D.C.Cir.1977).   This is an important point in this case, as the FBI's material contains the names of a number of innocent third party witnesses, and there is a pending criminal charge in state court.

Critically, the completion or closing of a federal criminal investigation does not automatically make all the underlying records in the investigation open and disclosable.  *Parton*

4

*v. U.S. Dep't of Justice*, 727 F.2d 774, 776 (8th Cir. 1984) (upholding agency's position regarding disclosure of documents from closed FBI investigation); *Edwards v. U.S. Dep't of Justice*, 43 F.3d 312 (7th Cir. 1994) (quashing post-conviction state court subpoena seeking investigatory records).

Under some circumstances, in this case and in other FBI investigations occurring long before the investigation at issue in this case, the FBI has shared records with state agencies while explicitly asking the state agency to return the records at the close of any state proceedings. *See e.g. United States v. Napper*, 887 F.2d 1528, 1529-30 (11th Cir. 1989) (affirming return to FBI of FBI criminal investigation records that the FBI loaned to state officials); *State v. Buenoano*, 707 So.2d 714, 718 (Fla. 1998) (holding criminal intelligence or investigative information provided by the federal government to a Florida State Attorney on a restricted basis cannot be disclosed and may only be used in accordance with the federal government's conditions); *see also City of Riviera Beach v. Barfield*, 642 So. 2d 1135, 1137 (Fla. Dist. Ct. App. 1994) ("[W]hen a criminal justice agency transfers protected information to another criminal justice agency, the information retains its exempt status."). It is undisputed in this case that the FBI used this long established loan procedure to the CAO for the federal records at issue here. When disclosure litigation occurs, the FBI can use federal law and federal courts to recover the documents. *Napper*, 887 F.2d 1529; *Story County,* 2014 WL 2986460.

### C. FOIA Exemptions (b)(6) and (b)(7)(C) – Unwarranted Invasions of Personal Privacy

FOIA Exemption (b)(6) exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). All information that applies to a particular person falls within the scope of FOIA Exemption (b)(6). FOIA Exemption (b)(7)(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be

5

expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[2] The practice of the FBI is to assert FOIA Exemption (b)(6) in conjunction with FOIA Exemption (b)(7)(C). Although the balancing test for FOIA Exemption (b)(6) uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for FOIA Exemption (b)(7)(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under both exemptions.

When withholding information pursuant to these two exemptions, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure. In asserting these exemptions, each piece of information is scrutinized to determine the nature and strength of the privacy interest of every individual whose name and/or identifying information appears in the documents at issue. When withholding the information, the individual's privacy interest is balanced against the public's interest in disclosure. For purposes of these exemptions, a public interest exists only when information about an individual would shed light on the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United

---

[2] As a threshold matter when applying FOIA Exemption (b)(7), an agency must first demonstrate that the records or information at issue were compiled for law enforcement purposes.  The FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency; to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security; and to further the foreign intelligence objectives of the United States. *See* 28 U.S.C. §§ 533 and 534; Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations ("AGG-DOM"); and 28 C.F.R. § 0.85.

The records at issue here were compiled as part of the FBI's joint investigation with local law enforcement authorities of the shooting of an individual by a police officer.   Thus, these records were compiled for a law enforcement purpose that is squarely within the law enforcement responsibility and authority of the FBI and FOIA Exemption (b)(7)'s threshold requirement is satisfied.

States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners.

### D. FBI Special Agents and Support Personnel

The FBI protected the names and identifying information[3] of FBI Special Agents ("SAs") and support personnel who were responsible for conducting, supervising, and/or maintaining the investigative activities reflected in the documents at issue here. These responsibilities included conducting interviews and compiling information, as well as reporting on the status of the investigation.

With respect to FBI SAs, they do not choose their assignments to any particular investigation. Publicity (adverse or otherwise) regarding any particular investigation to which they have been assigned may seriously prejudice their effectiveness in conducting other investigations. FBI SAs, as individuals, also have privacy interests in being protected from unnecessary, unofficial questioning as to the conduct of this or other investigations, whether or not they are currently employed by the FBI. They conduct official inquiries into various criminal and national security violation cases. They come into contact with all strata of society, conducting searches and making arrests, both of which result in reasonable but nonetheless serious disturbances to people and their lives. It is possible for an individual targeted by such law enforcement actions to carry a grudge that may last for years. These individuals may seek revenge on the agents and other federal employees involved in a particular investigation. The publicity associated with the release of an agent's identity in connection with a particular investigation could trigger hostility toward a particular agent. Thus, FBI SAs maintain substantial privacy interests in information about them in criminal and national security investigative case files.

---

[3] "Identifying information" includes, but is not limited to names, dates of birth, social security numbers, addresses, telephone numbers, and any other information that can be used to identify an individual.

7

After determining that these employees have substantial privacy interests, the FBI then considers whether there is any public interest in disclosing their information. The FBI then determines whether a public interest exists and whether disclosure of these employees' identities and information would increase the public's understanding of the FBI's operations and activities.

Accordingly, after conducting the privacy/public interest balancing test, the FBI has the opportunity to concluded whether that its employees' substantial privacy interests outweigh a non-existent public interest, and thus protect their information pursuant to FOIA Exemptions (b)(6)and (b)(7)(C).

### E.  Third Parties Who Provided Information to the Government

The FBI protects the names and identifying information of witnesses and individuals who provided information to the FBI in the course of, and in furtherance of, its investigation.

The FBI has found that information provided by individuals during an interview or otherwise is one of the most productive investigative tools used by law enforcement agencies. The largest roadblock to successfully obtaining the desired information is fear by the individual that his/her identity will be exposed and consequently, that he/she could be harassed, intimidated, or threatened with legal or economic reprisal, possible physical harm, or even death.  In order to surmount these obstacles, persons interviewed by or providing information to the FBI or other law enforcement agencies must be assured that their names and personally-identifying information will be held in the strictest confidence. The continued access by the FBI to persons willing to honestly relate pertinent facts bearing upon a particular investigation far outweighs any benefit the public might derive from disclosure of the names of those who cooperated with the FBI. Thus, the United States argues that the individual named in the FBI materials maintain substantial privacy interests in not having their identities disclosed.

Here, the FBI should be allowed the opportunity to determine whether a public interest would be served by disclosing these individuals' identities and whether their identities would shed light on the operations and activities of the FBI.  Therefore, the balancing of interests clearly favors protecting the individuals' privacy interests.  Accordingly, the FBI should be allowed the opportunity to balance these individuals' substantial privacy interests against the non-existent public interest in disclosure of their identities.  FOIA Exemptions (b)(6) and FOIA Exemption (b)(7)(C).  The Court should deny the Post-Dispatch's motion.  If the Post-Dispatch seeks the FBI's records, it should send a Freedom of Information Act request to the FBI's St. Louis office, giving the FBI an opportunity to provide responsive documents, perhaps in redacted form, as federal law allows.

The FBI also protects the names and identifying information of third parties who were merely mentioned in the law enforcement records. The FBI may have information about these third parties in its files because these individuals may have come in contact with subject of the FBI's investigation or had some tangential relationship to the incident under investigation. While these individuals may not be of investigative interest to the FBI, they maintain substantial and legitimate privacy interests in not having this information disclosed and thus, being publicly associated with a criminal investigation.  Disclosure of these third parties' names and/or identifying information in connection with an FBI investigation of criminal activities carries an extremely negative connotation. Disclosure of their identities would subject these individuals to possible harassment or criticism and focus derogatory inferences and suspicion on them. Accordingly, the FBI states that it should be afforded the opportunity to determine whether these individuals have substantial privacy interests in not having their identities disclosed.  FOIA Exemptions (b)(6)and (b)(7)(C).  Denying the Post-Dispatch's motion and leaving the Post-Dispatch to send a FOIA request directly to the FBI would enable the Post-Dispatch to obtain

9

any records it is entitled to under federal law. Further, the FOIA process would also give the Post-Dispatch and ultimately the Court a proper and complete record with which to assess and if necessary challenge the scope of any disclosures of the FBI's records.

### F. Local Law Enforcement Personnel

The rationale for protecting the identities of FBI SAs discussed previously applies equally to the names of non-party local law enforcement employees. Release of the identities of these law enforcement employees could subject them as individuals to unnecessary and unwelcome harassment that would invade their privacy, and could cause them to be targeted for compromise. Disclosure of this information would serve no public interest because it would not shed light on the operations and activities of the FBI. Accordingly, the FBI protects this information pursuant to FOIA Exemptions (b)(6) and (b)(7)(C).

### G. FOIA Exemption (b)(7)(F) – Danger to Life or Physical Safety

FOIA Exemption (b)(7)(F) protects records or information compiled for law enforcement purposes when "production of such law enforcement records or information . . . could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F). This exemption provides protections not only for law enforcement personnel but for any individual whose life or safety could reasonably be expected to be endangered if publicly disclosed in relation to particular law enforcement investigations.

Accordingly, the FBI has asserted FOIA Exemption (b)(7)(F), at times in conjunction with FOIA Exemptions (b)(6), (b)(7)(C), and/or (b)(7)(D), to protect the identities of FBI and other government employees working on these investigations, as well as individuals who have cooperated in these investigations. Government employees working on various investigations, have been threatened and harassed in conjunction with the case they investigated. Based on these experiences, the FBI can reasonably expect that disclosure of the identities of individuals

associated with the investigation, including FBI and government employees, cooperating witnesses, and informants, could endanger their lives or physical safety.  Accordingly, the FBI has seeks to have the opportunity to review the FBI material to determine if it should withhold information pursuant to Exemption 7(F), at times in conjunction with Exemptions 6, 7(C), and/or 7(D).  These important protections under FOIA directly apply to the investigative records sought by the Post-Dispatch, and the FBI should have a full and fair opportunity to carefully consider these federal disclosure laws when its records are at issue.   On this record, the Court should deny the Post-Dispatch's motion, and let the FOIA process proceed to ripen the issues and ultimately provide the Post-Dispatch with any and all federal records that it may be entitled to under federal law.

## CONCLUSION

For the reasons stated herein, the United States has an interest in this litigation as it relates to the St. Louis Post-Dispatch's Application Seeking Rescission of Protective Order Sealing Investigatory Files Produced in Discovery.  FBI material should not be produced in this civil litigation without the FBI first having a fair opportunity to review the materials under FOIA, and create the type of record necessary for fully resolving the production issues presented by the Post-Dispatch's request.

Based upon the authority and reasoning discussed in this Statement of Interest, The United States respectfully requests that this Court deny the St. Louis Post-Dispatch's Application, moves that the Protective Order previously issued by this Court regarding "investigatory files" remain in effect, and respectfully requests that all of the FBI's records be returned to the FBI without disclosure to the St. Louis Post-Dispatch.  Additionally, the United States retains an interest in its federal property, and therefore requests at the completion of the CAO's criminal case

1622-CR02213, that the CAO return all FBI materials, and grant such other and further relief as the Court deems just.

        Respectfully submitted,

        RICHARD G. CALLAHAN
        United States Attorney

        */s/ Nicholas P. Llewellyn*
        NICHOLAS P. LLEWELLYN #52836
        Assistant United States Attorney
        111 South 10th Street, Room 20.333
        St. Louis, MO   63102
        Telephone (314) 539-2200
        Facsimile (314) 539-2287
        Email: nicholas.llewellyn@usdoj.gov

**CERTIFICATE OF SERVICE**

    I hereby certify that on July 25, 2016, the foregoing Statement of Interest was filed with the Clerk of Court to be served by operation of the Court's electronic filing system to all attorneys of record.

        */s/ Nicholas P. Llewellyn*
        NICHOLAS P. LLEWELLYN