IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| A.B.S, as surviving daughter of deceased ANTHONY L. SMITH | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No.: 4:12-cv-00202-JCH |
| MAYOR FRANCIS SLAY, et al. | ) ) ) |
| Defendants. | ) |

**RESPONSE OF THE ST. LOUIS POST-DISPATCH**
**TO STATEMENT OF INTEREST OF THE UNITED STATES**

In the Statement of Interest of the United States ("SOI"), the United States Attorney, on behalf of the Federal Bureau of Investigation, asks the Court to deny the Motion of the St. Louis Post-Dispatch to Rescind Protective Order and to continue the Protective Order issued in this case in 2013.  In so doing, the FBI seemingly seeks to constrain any disclosure of the sealed investigatory records regardless of whether the FBI has any valid claim to the records.  Certainly, the FBI's involvement in the investigation of this shooting does not somehow insulate the entire investigation from public scrutiny or allow the FBI to assert exemptions in the federal Freedom of Information Act ("FOIA") as grounds to conceal records concerning investigatory activities by state or local authorities.

For the reasons stated in its original Memorandum (Doc. #86), Supplemental Memorandum (Doc. #92) and Response to the Circuit Attorney (Doc. #97), the Post-Dispatch maintains that the Protective Order effectively gagging the participants in this civil case from revealing materials pertaining to the shooting of plaintiff's decedent should be rescinded for all materials that were not generated by the FBI, including the police department recordings of the shooting incident.

2178868.1

1

## **DISCUSSION**

The FBI's motion and objections should have no bearing on any investigatory materials it did not create because such materials cannot be considered federal records belonging to the United States. (Doc. #98, p. 3); 44 U.S.C. § 3301(a)(1)(A).  Likewise, the FBI's mere involvement in the investigation, including participation in interviews or review of investigatory records, should not inhibit production of materials generated by non-FBI investigators or existing independently of the FBI.  Any material not created by the FBI is unaffected by the alleged authority of the United States to "enforce its contractual and property rights [over its records] in federal court." *See U.S. v. Napper*, 887 F.2d 1528, 1530 (11th Cir. 1989).  Thus, the FBI and, more generally, the United States, have no standing to the extent they seek to block this Court's rescission of the Protective Order at issue for materials not generated by the FBI.

As justification for its suggestion that the protective order remain in effect in its entirety, the FBI complains it was not aware that materials were disclosed to the civil litigants in this case and does not know what materials were disclosed. (Doc. #98, p. 11).  Of course, by virtue of the Protective Order, neither the Post-Dispatch nor the public know what materials were disclosed or if FBI-generated materials were even part of the discovery documents provided.  Unlike the Post-Dispatch, the FBI certainly had the means to ascertain those materials to which it might properly interpose an objection.  In failing to do so, it should not be permitted to suggest a wholesale rejection of the Post-Dispatch's motion.

Moreover, the FBI admits that any investigatory materials it generated (called Form 302s[1]) contain a readily identifiable legend. (Doc. #98, p.2).  Thus, in considering the Post-Dispatch's

---

[1] FBI 302 reports "are the formal typewritten interview reports prepared from the rough [interview] notes and recorded on Form FD–302." *United States v. Harrison*, 524 F.2d 421, 424 n. 2 (D.C.Cir.1975).

motion, the Court could readily identify as part of any Order rescinding the Protective Order those few materials for which the FBI seeks protection and need not keep the Protective Order in place in its entirety.

Further, police department recordings of the shooting incident at issue in this case, as well as any enhancements thereto,[2] are the property of the St. Louis Police Department, not the FBI. Moreover, the recordings would not identify or jeopardize the safety or privacy interests of third party witnesses or FBI agents;[3] so there would be no justification for keeping the Protective Order in place for the enhanced recordings, even if considered the property of the FBI–a claim the St. Louis Post-Dispatch disputes.  Other St. Louis Police Department materials should likewise be unaffected by the FBI's alleged interest in this case, regardless of whether they were made available at any point to the FBI.

Finally, the United States Attorney complains that if the protective order is lifted, "there is a likelihood that the St. Louis Post-Dispatch will release many of the records to the public." (Doc. #98, p.2).  That is undisputed.  But what also is undisputed is that the shooting at issue occurred over four years ago with no criminal charges sought until recently.  Also undisputed is the fact that the United States Attorney has publicly stated that his investigation did not warrant charges, and now says also that the FBI records and other investigatory materials were provided to the Circuit Attorney for its investigation into state criminal charges. (Doc. #98, p. 2).  Yet, until recently, no charges were filed.  Though the Circuit Attorney has referenced "new" evidence justifying the

---

[2] News accounts suggest that the St. Louis Police Department paid $5,500 for a "forensic analysis of the in-car video and audio, which became part of the investigation." (Doc. 97-1, p. 7 of 12).  If true, even if the enhancements were made by the FBI, it is hard to conceive how it could claim a proprietary interest in materials paid for by local authorities.

[3] Police officers at the scene are already well-known, and there were no FBI agents present.  Importantly, the person whose rights are most at issue, Stockley, has not objected to the release of these materials.

current charges against the police officer involved, if that evidence is "new," it is not something that would be included among the matters subject to the protective order.

The case at hand presents serious issues regarding the performance of public officials. *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997) (Lifting protective order and stating "[p]erformance of police duties and investigations of their performance is a matter of great public importance."). A police officer is charged with murder years after the fact. Investigatory authorities seem to disagree as to the reasons for the delay, and the accused claims the charges are unjustified and has not interposed any objection to the Post-Dispatch's request. Claims of a pending investigation asserted as justification for the Protective Order in 2013, no longer exist in light of the charges. Finally, secret settlements of police involved shootings and denying public access to the terms thereof and the underlying evidence is inimical to the public interest.

"Good cause" is the standard applicable to discovery protective orders, and it remains the standard even after conclusion of the case. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778-79 (3d Cir. 1994). While "good cause" may have existed while the case was under investigation, thereby justifying the protective order then sought by defendants, it does not exist now for records the release of which would not work a clearly-defined injury, where there is a clear public interest involved, and where none of the parties, including the person now facing criminal charges, have objected. Indeed, in the seriatim proceedings involving the Post-Dispatch's request, only non-parties have raised any objection—the circuit attorney based on fair trial claims that are unfounded (*see* Doc. # 92, pp. 4-5; Doc. #97, p. 2); and the FBI based on claims that it owns its records notwithstanding having given them to local authorities and possibly allowing them to be provided to plaintiffs herein (assuming they were part of the discovery materials produced). The Protective Order should be lifted, with the possible exception of clearly-identified FBI 302 reports.

4

## **CONCLUSION**

For the reasons identified in the Post-Dispatch's Motion (Doc. #85), original Memorandum in Support (Doc. #86), its Supplemental Memoranda (Docs. #92, #97) and this Response, this Court should rescind the Protective Order, and enter the order suggested and consented to by the Police Board Defendants. (Doc. #89-1).

        Respectfully Submitted,

        LEWIS RICE LLC

        By:    /s/ Joseph E. Martineau
           Joseph E. Martineau, #32759MO
           Krista C. McCormack #68239MO
           600 Washington, Avenue, Suite 2500
           St. Louis, Missouri 63101
           Tel.:  314/444-7729; Fax:  314/612-7729
           Email: jmartineau@lewisrice.com

        *Attorneys for the St. Louis Post-Dispatch and Robert Patrick*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 3rd day of August 2016, a copy of the above and foregoing document was electronically filed and served via the Court's ECF-CM system and/or by e-mail (where indicated) on:

Albert S. Watkins
**KODNER & WATKINS**
7800 Forsyth Blvd, Suite 700
St. Louis, Missouri 63105
E-mail: albertswatkins@kwmwlaw.com

James W. Schottel, Jr.
**SCHOTTEL & ASSOCIATES, P.C.**
906 Olive Street
St. Louis, Missouri 63101

Neil J. Bruntrager
**Bruntrager & Billings, P.C.**
1735 South Big Bend Blvd
St. Louis, Missouri 63117
E-mail: njbatty@aol.com

Nicholas P. Llewellyn
**Assistant United States Attorney**
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
E-mail:  nicholas.llewellyn@usdoj.gov

Michael A. Garvin
**CITY HALL**
1200 Market Street, Room 314
St. Louis, Missouri 63103
E-mail:  GarvinM@stlouis-mo.gov

Robert J. Isaacson
**Ass't Attorney General**
Old Post Office Building, P.O. Box 861
St. Louis, Missouri 63188
E-mail: robert.isaacson@ago.mo.gov

Christine Krug
**Assistant Circuit Attorney**
1114 Market Str., Room 401
St. Louis, Missouri 63101
E-mail: krugc@stlouiscao.org

    /s/ Joseph E. Martineau