**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| A.B.S., as surviving daughter of deceased ANTHONY L. SMITH, and a minor, by and through her next friend CHRISTINA WILSON, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No.: 4:12-cv-00202-JCH |
| v. | ) ) | |
| BOARD OF POLICE COMMISSIONERS, Et al., | ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF A.B.S.'S OMNIBUS REPLY IN SUPPORT OF HER MOTION TO RE-OPEN DISCOVERY, MOTION FOR SHOW CAUSE HEARING AND MOTION FOR SANCTIONS**

COMES NOW Plaintiff, by and through her undersigned counsel, and for her Omnibus Reply in Support of her Motion to Re-Open Discovery, Motion for Show Cause Hearing and Motion for Sanctions ("Motion"), states to the Court as follows:

**PROCEDURAL POSTURE**

Plaintiff filed the instant Motion against Dana (Tucker) Redwing, Jason Stockley, the City of St. Louis and the Attorney General's Office on December 18, 2017. The Motion sought the following relief:

(1) Re-opening of discovery in this litigation for the limited purpose of determining when the Defendants and their counsel obtained the DNA reports referenced above, who had access to same and why they were not disclosed to Plaintiff during discovery;

(2) An Order from the Court requiring the Attorney General to release the full Goldsmith Report or, in the alternative, *in camera* review of same by the Court pending further determination of additional disclosure of same;

(3) An Order for Defendants and their attorneys to show cause why they should not be held in contempt of Court for failure to comply with this Court's March 1, 2013 Order as it relates to production and/or disclosure of the DNA reports; and

(4) Sanctions against Defendants and/or their counsel for abuse of the discovery process during this litigation, including, but not limited to, Plaintiff's reasonable attorneys' fees in bringing this Motion.

In response to the Motion, Dana Redwing filed her opposition on January 25, 2018 (Doc. 114), the City of St. Louis's response was filed January 29, 2018 (Doc. 119) and the Attorney General's response was filed February 1, 2018 (Doc. 121). Mr. Stockley, though he is represented by counsel, has not filed a response. This Omnibus Reply shall serve as Plaintiff's response to all parties.

## DANA REDWING

At the outset of her Response, Ms. Redwing notes that she is not a party to the underlying litigation, and, as such, has no standing to object to the Motion to Re-Open Discovery. She does, however, object to the Motion for Sanctions. She makes no mention of the Motion for Show Cause Hearing, but Plaintiff interprets her objection to the Motion for Sanctions tantamount to opposition to the Motion for Show Cause Hearing.

There can be no doubt at this stage of the game that Dana Redwing is the individual the other parties seek to place under the proverbial bus. Plaintiff certainly understands why. The Goldsmith Report makes clear Ms. Redwing was aware of the DNA Reports and the results of same prior to the mediation giving rise to the settlement of the underlying suit. The Report confirms that information was not disclosed to Plaintiff's counsel. The Report confirms that information should have been disclosed. Ms. Redwing does not deny any of these conclusions.

Instead, Ms. Redwing's Response acknowledges Mr. Goldsmith is a "very competent and thorough attorney" and argues that her conduct does not rise to the level of being sanctionable.

Page **2** of **11**

The brief opposition memorandum seeks to shift the Court's focus from Ms. Redwing's knowledge and conduct to the Plaintiff's efforts, or lack thereof, to uncover her deceit.  Plaintiff is undeterred by the distraction.  There is an elephant in the room and Plaintiff may as well channel her inner Howard Henry Baker, Jr. and ask:

*"What did Dana Redwing know and when did she know it?"*

With regard to Ms. Redwing's involvement, that is what this is all about.  Her protestations about the laboratory reports themselves not being in her possession, while relevant, are ancillary to that issue.  Indeed, Ms. Redwing's filing indicates "many of the relevant records" are unavailable to Ms. Redwing.

With regard to whether Ms. Redwing's conduct rises to the level of that which is sanctionable or contumacious, Plaintiff offers additional information that has arisen since the publication of the Goldsmith Report.  The undersigned has received contact from a source with familiarity with the document that there are written Meeting Minutes from a meeting of the Board of Police Commissioners just prior to the mediation of this case in which the Board provided its counsel settlement authority up to one million dollars expressly because of the DNA evidence in this case.

Subsequent to filing of the instant Motion, we have been advised by the Circuit Attorney's that it is unable to provide us with the meeting minutes because they are subject to a protective order in the criminal case against officer Stockley.  We have requested that document from the Attorney General's Office, which has declined to produce same pursuant to the Sunshine Act on account of the pending Motion rendering that document a closed record under the statute.  Should discovery be re-opened, we intend to request this document from all parties

and we intend to inquire of Dana Redwing and those in attendance at the Board meeting regarding that document and that meeting.

The relevance of same is manifold and justifies re-opening discovery. In an attempt at efficiency in getting to the bottom of these issues, the undersigned contacted counsel for the City, now tasked with defending the Board after reading the City's Response. Counsel inquired of the City (1) how the Board came to know about the DNA evidence; (2) how Dana Redwing learned of the DNA results without receiving the Report; and (3) whether the DNA Reports were requested by Dana Redwing when she was made aware of their contents (and, if not, why not?). Unsurprisingly, the City was unwilling to divulge this information. These are questions the answers to which carry significant implications, in Plaintiff's view, on how the Court should rule upon the Motion for Sanctions and in any analysis of whether a finding of contempt is appropriate.

In short, Dana Redwing's Response to the Motion supports an Order re-opening discovery and does nothing to ease the concerns raised in the Goldsmith Report. The known facts are troubling to Plaintiff, should be troubling to the Court and, particularly in light of new information concerning the Board's meeting minutes, should be investigated further. Given that fact and her absence of objection regarding re-opening discovery, the Court is amply justified in re-opening discovery for the purpose of examining whether sanctions and/or contempt are appropriate here.

## **JASON STOCKLEY**

Jason Stockley has made no response to the Motion. Receiving no opposition, Plaintiff requests the Court re-open discovery as to Mr. Stockley's involvement and conduct relative to

the production of the DNA evidence for the purpose of evaluating whether he should be sanctioned and/or held in contempt of this Court's March 1, 2013 Order.

## ATTORNEY GENERAL'S OFFICE

At the outset, the AG's office cautions the Court against construing the Motion as being one seeking relief from the final judgment in the underlying civil case. Plaintiff believes she was clear in this regard in the Motion, but reiterates her position here. The Motion is indeed not one challenging the finality of the underlying litigation. The Motion is directed to rectifying abuses of the discovery process.

The AG's office consents to the *in camera* inspection of the unedited Goldsmith report for evaluation of privilege and confidentiality. While Plaintiff's counsel is generally reluctant to foist such grunt work onto the Court, we are left with little choice in this matter. Plaintiff has not been provided with a privilege log or any explanation of the claims of privilege and is unable to evaluate the propriety of such claims. The Court's evaluation in this regard would be most helpful and welcomed by Plaintiff.

Plaintiff is not seeking sanctions against the entire AG's office. However, the Goldsmith Report does not identify all individuals within that office who have engaged in wrongdoing, although it does suggest there may be others from that office who may be culpable. That is evident to Plaintiff for reasons outside the Report. In particular, the AG's office claimed to discover a conflict of interest between Officer Stockley and two attorneys from the AG's office on the eve of several depositions scheduled in the underlying case. Those depositions were postponed until after the mediation as a result. Surprisingly, another attorney from within the AG's office entered his appearance on behalf of Officer Stockley. Plaintiff cannot envision a scenario in which the AG's office can cure a conflict with a client by swapping out attorneys

within the same office.  Similarly, Plaintiff cannot envision how a conflicted attorney could continue to represent one of the parties to that conflict, which happened here with Dana Redwing's continued representation of the Board despite her conflict with Stockley.  While unclear at the time, it is Plaintiff's current hypothesis this tactic was deployed to prevent the depositions from taking place before the mediation.

There is a second component to Plaintiff's allegations against the AG's Office.  Plaintiff began inquiring of the AG's office about the DNA results shortly after the criminal charges against Officer Stockley were made public.  The communication received from the AG's office in response to those inquiries was, charitably speaking, misleading.  The Goldsmith Report reached a similar conclusion when it found:

> [W]e reviewed Plaintiff's allegation that the AGO's June 28, 2016 letter, in response to Plaintiff's counsel's June 22, 2016 inquiry concerning the DNA testing results and video recording, was intentionally non-responsive.  While the AGO's response letter was factually accurate in advising Plaintiff's counsel that the AGO's file contained no "report" concerning DNA testing which was not produced to Plaintiff during discovery, it failed to advise Plaintiff's counsel that at least one AAG, the lead AAG, was in fact aware of the DNA testing results prior to the June 20, 2013 Mediation and settlement.

Plaintiff believes there was an ongoing effort, as recently as June 2016, to hide abuses of the discovery process in this case by those within the AG's office.  In any event, Plaintiff expects discovery, should it be permitted, to illuminate the correct player(s), if any, within the AG's office deserving of sanctions and/or contempt.

## BOARD OF POLICE COMMISSIONERS

The Board of Police Commissioners is a defunct political body whose duties have been subsumed by the City of St. Louis effective September 1, 2013 pursuant to the State of Missouri's "local control" statutes.  Prior to that date, the Board was a State controlled body responsible for managing the operations of the St. Louis Metropolitan Police Department.  The

Board was represented by the AG's Office.  Subsequent to "local control", the obligations of the Board existing prior to September 1, 2013 were to have remained with the AG's office, but that office has declined to provide representation on account of an unstated conflict of interest.  As a result, the City of St. Louis has assumed the obligation of defending the Board.

Counsel for the Board has indicated their "recitations [in their Response to Motion] are primarily based upon pleadings and docket entries together with the findings of the Goldsmith Report referenced below." Doc. 119 at p. 2.  Just as is the case with Ms. Redwing, permitting counsel for the Board to obtain the relevant documents is a sufficient basis alone for re-opening discovery.

Despite its limited access to documents and absence of direct knowledge, the City has hypothesized in its Response that Plaintiff will fail to make proof of willful or intentional discovery abuses if a hearing is convened, at least with respect to the Board.  This prediction appears to be the result of a selective reading of the Goldsmith Report.  As alluded above, the allegations of the Plaintiff are not limited solely to the physical written laboratory reports containing the DNA test results.  The correspondence exchanged prior to Plaintiff's filing of the Motion, the Goldsmith Report and the subsequent filings by the parties, taken together, make clear that there is some nuanced hair splitting going on between the parties on the Defendants' side of the ledger.

To be clear, the relevant materials withheld consist of (1) information and (2) documents. The information is the results of certain DNA tests.  Specifically, the information withheld is that Officer Jason Stockley's DNA was obtained from the handgun retrieved from Anthony Lamar Smith's vehicle and Anthony Lamar Smith's DNA was not located on that handgun ("Information").  According to the Goldsmith Report, the Information was known by Dana

Redwing, as well as many agents of the Board, prior to June 20, 2013.  The newly obtained information concerning the meeting minutes further supports the notion that many agents of the Board were aware of this Information prior to June 20, 2013.  Indeed, it appears from the City's Response that the City's defense to the Motion for Sanctions and Motion for Show Cause Hearing is, in part, predicated on the observation that the Board must have been aware of this Information in order for Dana Redwing to have been made aware of same.  Plaintiff agrees the Board and its agents were aware of the Information prior to June 20, 2013.

What is problematic from Plaintiff's perspective is the second category of relevant material withheld, to wit, the documents.  The documents consist of the two DNA laboratory reports dated February 12, 2012 and July 31, 2012, which contained the Information referenced above ("Documents").  The Goldsmith Report and the filings to date all appear to agree that the information was in the possession of, at a minimum, agents of the Board and Ms. Redwing.  Where the hair splitting begins is with the Documents.  As referenced above, the AG's Office was careful in its correspondence to Plaintiff, prior to the filing of the instant Motion, to state the AG's files did not contain the Documents, although the AG's Office was aware of the Information contained in those Documents.

That obfuscation necessarily bleeds into an inquiry of the Board.  Any competent attorney, and certainly one of the pedigree and experience of Ms. Redwing, when advised of important information contained in documents, reflexively requests to be provided with those documents.  In this case, despite receiving the Information, the Documents were not provided to Plaintiff and are not contained in the AG's files.  These are agreed upon facts.  The explanation for those facts is not set forth in the Goldsmith Report and, absent further discovery, is only the subject of conjecture by the parties and the Court.  Obviously, the Plaintiff is skeptical of the

Defendant and believes the truthful explanation is not an innocent one.  The City, in its Response, notes "the Goldsmith Report allows for the possibility that the laboratory reports were 'simply inadvertently left out'."  While appallingly unlikely, especially given the gravity of the Documents and their uncomfortable status as the only known documents not to have been produced from the SLMPD, IAD and FBI files, it is possible.  Investigating that explanation is the purpose of Plaintiff's Motion to re-open discovery.  Plaintiff hears the City's pleas for leniency and the benefit of the doubt.  It is possible the failure to disclose either the Information or the Documents was not nefarious, but Plaintiff's request of this Court is to permit Plaintiff to test that conclusion with further discovery.  The City concedes, if the Court is amenable to considering sanctions against the Board, the Board "would not object to limited discovery prior to a full and fair opportunity for the Police Board to present evidence in its defense."

     Finally, the City argues a sanction against the Board would be unjust and serve no remedial purpose because responsibility lies with the State and not the City which assumed the duties of the Board previously under State control.  The City argues it should not be responsible for sanctions premised upon the misconduct of the AG's office.  On this limited point, we agree.  If the Court determines the misconduct was solely perpetrated by the AG's office, then the AG's office should be the only party punishable.  However, if the Board was complicit in the willful or nefarious withholding of the Information or Documents, the Board should be made accountable.  The City's complaint that it is subject to a $1,000,000 annual cap for expenses arising out of actions occurring before September 1, 2013 is of no moment here and should have no bearing on this Court's analysis.  The facts supporting the City's assertion that the State is likely to exhaust its fiscal year obligations for the next several years requires analysis of issues well outside the scope of the case at bar even if it were, *arguendo*, germane to the discussion.  It is Plaintiff's

view that the inadequacy of the "local control" statutes, if any, is an issue to be resolved between the City and the State and not one for the Court to weigh or consider in fashioning a remedy here.

## CONCLUSION

The overwhelming message of the responses filed by Dana Redwing, the Attorney General, the City of St. Louis, taken together with the non-response of Jason Stockley, is with each filing and each passing day we get more questions than answers.  What is not questioned is there is Information and Documents that were in the possession of the Defendants and/or their counsel, those items should have been disclosed pursuant to both discovery requests and this Court's expressed Order of March 1, 2013, but, for reasons that remain unknown, were not.  The items withheld were not ordinary items.  They were items that would have had, if disclosed, a marked positive impact on the strength and value of Plaintiff's position in the underlying litigation.  The non-disclosure of same wrongfully and greatly enhanced the negotiating position of the Defendants.  The withholding of Information and Documents appears to be isolated to the items at issue here and not part of a larger and more widespread discovery snafu.  Curiously and sadly, the withheld Information and Documents relate to self-defense, the single most probative issue in the case.  The Plaintiff deserves answers.  If everything is as innocent as the City would have the Court believe, discovery will bear that out.  At this point, it does not look that way.  Frankly, it smells bad, really bad.

Plaintiff prays this Honorable Court enter an Order re-opening discovery for the purpose of examining the circumstances surrounding the withholding of the Information and Documents and, subsequently, determine whether sanctions and/or contempt are appropriate for any of the parties and/or counsel involved herein.

KODNER WATKINS, LC

   /s/ Albert S. Watkins
By: ALBERT S. WATKINS, LC #34553MO
    MICHAEL D. SCHWADE, #60862MO
    The Bank of America Building
    7800 Forsyth Blvd., Suite 700
    Clayton, Missouri 63105
    314-727-9111 (telephone)
    314-727-9110 (facsimile)
    albertswatkins@kwklaw.net
    mschwade@kwklaw.net

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

Signature above is certification that on this the 19th day of February, 2018 a true and correct copy of the foregoing document was filed electronically using the CM/ECF System which will cause a copy to be served upon all counsel of record.