IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| A.B.S., as surviving daughter of deceased ANTHONY L. SMITH, and a minor, by and through her next friend CHRISTINA WILSON, <br><br> Plaintiff, <br><br> v. <br><br> BOARD OF POLICE COMMISSIONERS, Et al., <br><br> Defendants. | Case No.: 4:12-cv-00202-JCH |

### PLAINTIFF A.B.S.'S MOTION TO COMPEL PRODUCTION OF UNREDACTED GOLDSMITH REPORT

COMES NOW Plaintiff, by and through her undersigned counsel, and for her Motion to Compel Production of Unredacted Goldsmith Report, states to the Court as follows:

### PROCEDURAL POSTURE

Plaintiff filed her Motion to Re-Open Discovery, Motion for Show Cause Hearing and Motion for Sanctions on December 18, 2017 (Doc. 104), based in part on the findings of the December 5, 2017 Goldsmith Report. The version of the Goldsmith Report released to the public is a redacted version of same with certain facts and sources omitted. On March 8, 2018, the Court ordered the Missouri Attorney General's Office ("AGO") to file the complete Goldsmith Report to the Court for *in camera* inspection (Doc. 132). The AGO did so on March 16, 2018 (Doc. 135) and, upon information and belief, the Court reviewed same.

On March 27, 2018, the Court conducted a teleconference with the parties during which the Court granted Plaintiff the opportunity to conduct limited discovery in support of her Motion for Show Cause Hearing and Motion for Sanctions. It is Plaintiff's belief this decision was

premised, in part, upon the contents of the unredacted Goldsmith Report. The Court entered a scheduling Order on April 9, 2018 (Doc. 140). Plaintiff issued her Joint Requests for Production of Documents to All Respondents ("Requests") on April 10, 2018. On April 13, 2018, counsel for the Board of Police Commissioners noted the Requests were directed to the City of St. Louis, rather than the Board of Police Commissioners. Accordingly, on April 13, 2018, Plaintiff re-issued the identical Requests with the exception they were directed to the Board rather than the City. A true and correct copy of the Requests is attached hereto as Exhibit 1.

Intervenor Attorney General's Office responded to the Requests on May 9, 2018 ("AGO Responses"). A true and correct copy of the AGO Responses is attached hereto as Exhibit 2. Along with the AGO Responses, the AGO produced a Privilege Log corresponding to the documents withheld from production in response to the Requests. A true and correct copy of page 53 of the AGO's Privilege Log referencing the Goldsmith Report is attached hereto as Exhibit 3. The Privilege Log indicates the unredacted Goldsmith Report is dated November 27, 2017 and is an "electronic document". The document is withheld on the basis of the attorney-client privilege and the work product doctrine. Ex 2 at #9.

On December 5, 2017, Attorney General Josh Hawley issued a press release expressing a desire to release the unredacted report, but stating he was unable to do so on account of the privilege. As recently as August 15, 2018, during the deposition of Albert S. Watkins, Esq., counsel for the AGO affirmed Mr. Hawley's desire to release the unredacted Goldsmith Report. Despite requests from Plaintiff, neither the Board nor Jason Stockley have agreed to waive the privilege as to the unredacted Goldsmith Report. This Motion results.

**ARGUMENT**

We challenge the claims of attorney-client privilege for the following reasons. First, the filings in this case have made clear, and the AGO has confirmed in writing, the AGO advised the Board it was not representing the Board or Officer Stockley, at the latest, on September 22, 2017. The AGO advised Plaintiff by letter dated September 25, 2017 the AGO no longer represents the Board or Officer Stockley and the AGO would not prospectively be representing the Board or Officer Stockley. The AGO investigation into Plaintiff's allegations did not commence until sometime after that September 25, 2017 letter. Accordingly, any communications between the AGO and its former clients after September 22, 2017 and contained in the unredacted report are not attorney-client communications. Upon information and belief, Respondent Stockley was not even interviewed in connection with the preparation of the Goldsmith Report.

Second, even if such communications were properly attorney-client communications, the "at issue" exception to the attorney-client privilege is clearly invoked insomuch as the Board and Officer Stockley have denied, in written filings before this Court, responsibility for the withholding (inadvertent or otherwise) of the subject information and documents. The Board's response is particularly aggressive in this regard. The Board, in response to the pending motion, stated:

- "Plaintiff will fail to make such proof if a hearing is convened, at least with respect to the Board" (p. 1 of Doc. 119 - Board's Response in Opposition)
- "The information was provided to the Board's counsel." (p. 2 of Doc. 119)
- "The only conceivable way that the AGO would have become aware of the subject lab reports prior to settlement was if 'agents of the Police Board' (i.e. police officers) advised counsel prior to settlement." (p. 3 of Doc. 119)
- On p. 7 of the Response, the Board uses the passive voice to confirm the DNA reports were omitted from April 2013 document productions but is careful not to indicate who omitted the documents before confirming the SLMPD provided the documents to both the U.S. Attorney's Office and the Circuit Attorney's Office in 2012. The implication is clear that the SLMPD likely did the same with regard to its counsel (i.e. turned over the DNA reports).

- On p. 12 of the Response, the Board "acknowledges [ . . .] that the DNA Lab Reports were responsive to the Court's March 1, 2013 order, and that these lab reports should have been included when the AGO produced the IAD files to Plaintiff's counsel." This acknowledgment is repeated on p. 18 of the Response. Again, the Board uses vague language acknowledging an error but equivocating on whether the blame lies with the Board for failing to turn the documents over or with the AGO for failing to produce documents in its possession.
- On p. 13 of the Response, the Board makes stronger implications when it writes, "The Police board and its agents were represented by the AGO.  Therefore, all document production flowed through counsel.  As indicated in the Goldsmith Report, the SLMPD informed [Dana Redwing] of the results of the DNA lab analysis prior to the mediation [ . . . ] The fact that the SLMPD had informed [Dana Redwing] of the results of the DNA analysis demonstrates that the SLMPD was not engaged in a 'scheme' intended to abuse the discovery process."  The implication is clear.  The Board says everything went through its counsel and it informed its counsel of the test results.
- The Board continues on p. 14 of the Response to claim it "fulfilled its duty to inform its counsel of the lab tests and their results. From there, the Police Board properly relied on its counsel's professional obligation to make a reasonably diligent effort to comply with discovery obligations and the court order."
- The Board reiterates this point in the middle of p. 15 of the Response.
- On p. 17, the Board gets vague again and states it "informed [Dana Redwing] one way or another about the results of the DNA analysis."
- Further on p. 17, the Board alleges the failure to produce the DNA Reports was attributable to "human error," without stating which human(s) made that error. Instead, the Board leaves that question unanswered, but in the context of its earlier statements of deflection, suggests that the human(s) was/were counsel for the Board.  Instead, the Board seeks to make the allegation that human error is the reason for the non-disclosure, but then seeks to invoke the attorney-client privilege to shield itself from any inquiry into that claim.
- Finally, on p. 21 the Board makes its allegations blatantly clear when it states sanctions against the Police Board would be unjust because "[t]he City is certainly not responsible for sanctions based upon the AGO's conduct or omissions."  Here, the City is clearly claiming any sanctions in this case are a function of "the AGO's conduct or omissions."  The AGO did not operate the Police Board at any time.  It only represented the Board.  Accordingly, any conceivable sanction in this matter attributable to the AGO is a function of an act or omission of counsel for the Board, according to the Board.

The upshot of the Board's claims in the Response is to throw the AGO under the proverbial bus, but to be careful not to expressly do so (presumably to avoid running afoul of a joint defense agreement).  The responses of the Board and Jason Stockley place at issue who, among the Respondents, is responsible for the failure to produce the DNA Reports.  The "at issue"

exception to the privilege is recognized in this circuit.  A waiver of the attorney-client privilege may be found where the client places the subject matter of the privileged communication at issue.  *See Baker v. Gen. Motors Corp*., 209 F.3d 1051, 1055 (8th Cir. 2000).  That is, the attorney-client privilege cannot be used as both a shield and a sword.  *See United States v. Workman*, 138 F.3d 1261, 1263–64 (8th Cir. 1998).

The same "at issue" exception applies to communications within the Goldsmith Report which concern the DNA Reports, DNA Information and failure to produce same, including those written prior to September 22, 2017.  That is the core issue in the pending Motion and the positions of the Respondents have put the fault for that failure at issue herein.  Any documents on that topic should be disclosed, including those existing or referenced within the unredacted Goldsmith Report.

The AGO has also withheld the unredacted Goldsmith Report on the basis of the work product doctrine.  We note any such claim is contrary to the text and tenor of the September 25, 2017 letter the AGO sent Plaintiff indicating her allegations deserve a full, accurate and *transparent* response and that it was because they deserve such a response that the AGO commissioned the Goldsmith Report.

In any event, Plaintiff cites the exception to withholding under the work product doctrine found in FRCP 26(b)(3)(A)(ii), which provides:

> (3) *Trial Preparation: Materials.*
>
> (A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26(b)(1); and
> >
> > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

      The crux of Plaintiff's pending Motion is premised upon the findings of the Goldsmith Report. The findings are supported by data which are being withheld on account of the work product doctrine. The substantial need for the supporting data is facially apparent. We cannot obtain that information or a substantial equivalent because the underlying documents are withheld subject to claims of attorney-client privilege, as challenged above. Moreover, there is no risk of disclosure of the AGO's mental impressions in this litigation because the report was prepared by the AGO's independent counsel, Hal Goldsmith, Esq. Mr. Goldsmith is taking no part in the defense of the Motion and, accordingly, his mental impressions are of no risk to exposing the AGO's legal strategy in this case.

      To the extent the Report or its supporting documents include mental impressions of the AGO relative to the underlying litigation, any concerns arising therefrom present no danger to the Respondents. The AGO is no longer representing any party to this matter. The underlying litigation has been resolved and any case strategy that existed in the mind of the Board's prior counsel in 2013 does not disadvantage any party on the issue of discovery abuses. Dana Redwing is no longer a party to or representing a party in this matter. Jason Stockley claims he did not even participate in the AGO's representation of him.

## **CONCLUSION**

      This matter is largely predicated upon the findings of the Goldsmith Report. That report makes clear there was a serious miscarriage of justice in the underlying lawsuit. The facts giving rise to that conclusion have been shrouded in secrecy for far too long, most recently under the guise of the attorney-client privilege and work product doctrine. Given the passage of time and the procedural posture of this matter, the legal and policy considerations in play dictate Plaintiff be granted an unfettered view to that which vexed her prior pursuit of justice. This Court is in a

unique position of having already reviewed the materials sought.  While Plaintiff is loathe to burden the Court with discovery disputes, this Court is already ideally situated to dispense with the current conflict posthaste.

                KODNER WATKINS, LC

                _____/s/ Albert S. Watkins_____
By: ALBERT S. WATKINS, LC #34553MO
     MICHAEL D. SCHWADE, #60862MO
     The Pierre Laclede Center
     7733 Forsyth Blvd., Suite 600
     Clayton, Missouri 63105
     314-727-9111 (telephone)
     314-727-9110 (facsimile)
     albertswatkins@kwklaw.net
     mschwade@kwklaw.net

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

Signature above is certification that on this the 23rd day of August, 2018 a true and correct copy of the foregoing document was filed electronically using the CM/ECF System which will cause a copy to be served upon all counsel of record.