# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| A.B.S., as surviving daughter of deceased ANTHONY L. SMITH, ) ) ) Plaintiff, ) ) v. ) ) FRANCIS SLAY *et al.*, ) ) Defendants. ) | Case No. 4:12-cv-00202-JCH |

**MEMORANDUM OF DEFENDANTS BETTYE BATTLE TURNER, RICHARD GRAY, THOMAS IRWIN AND FRANCIS SLAY IN RESPONSE TO A.B.S.'S MOTION TO COMPEL PRODUCTION OF UNREDACTED GOLDSMITH REPORT**

The attorney general's response pleading in "opposition" to plaintiff's Motion to Compel Production of Unredacted Goldsmith Report (Doc. 160) illustrates the farcical position that the Board of Police Commissioners faces in this matter. Before "opposing" the release of information protected by the attorney-client privilege on behalf of his client, the attorney general first announces his disagreement with his client's interests and position. This is nothing less than a betrayal of the attorney general's professional and ethical obligations to his clients, Defendants Bettye Battle Turner, Richard Gray, Thomas Irwin and Francis Slay (collectively referenced herein as the "Police Board"). Making the transgression more egregious, the Police Board and its attorneys have yet to receive a copy of the final Goldsmith Report commissioned by the attorney general's office. Undeterred by that fact, in "opposing" plaintiff's request, the attorney general piously suggests its client should, sight unseen, waive attorney-client privilege for the document.

The Police Board is thus placed in the untenable position of being stuck between an attorney general using these pleadings as campaign literature for a U.S. Senate seat and plaintiff's counsel who has publicly announced his intent to turn these proceedings into a "shitshow [sic] for the ages." *State Withheld DNA Evidence from Anthony Lamar Smith's Family, Investigation Finds*, Riverfront Times, Dec. 5, 2017.

### A.  Attorney General's Report

Plaintiff directs her Motion to an investigation commissioned by the attorney general to determine the facts and circumstances related to plaintiff's allegations that the attorney general failed to produce DNA evidence in this cause. A version of the Goldsmith Report without attorney-client privileged material was attached to plaintiff's Motion as Exhibit 9 (Doc. 104-9). With respect to DNA evidence, the Report concluded:

> It is clear from our investigation that AAG 1 was aware, *prior to the June 20, 2013 Mediation conference,* of the DNA lab test results reflecting Stockley's DNA having been recovered from the Taurus revolver, and that these DNA lab test results were not produced to Plaintiff in discovery.

*Id*., p. 8 (emphasis in original).[1]

To date, the attorney general has not provided the final Goldsmith Report – which apparently contains information protected by the attorney-client privilege – to its client, the Police Board. Although the Board's counsel has not seen the full, unredacted version of the Goldsmith Report, counsel understands that the final version was provided to the Court by the attorney general for *in camera* review pursuant to this Court's Order dated March 8, 2018 (Doc. 132).

---

[1] "AAG" is an acronym used in the report to refer to "assistant attorney general."

B.      **Privileged Information in the Goldsmith Report**

The Goldsmith Report results from an investigation commissioned by the attorney general. The investigator's task, as described in the Report (Doc. 104-9), was to determine the facts and circumstances related to plaintiff's allegations that certain material was not produced during discovery. This necessarily required an inquiry regarding not only the conduct of the attorney general's office, but also of the attorney general's client, the Police Board. In many respects, the attorney general commissioned an investigation of its own client. In the course of investigating its client, staff at the attorney general's office provided the Police Board's confidential, privileged client information to the investigator. Goldsmith Report, p. 3.

To the best of undersigned counsel's knowledge, no one in the attorney general's office sought or obtained consent of the Police Board to disclose to the investigator any privileged, internal communications or information gathered by the attorney general during the course of its representation of the Police Board. The Goldsmith Report states that the investigator reviewed the attorney general's files pertaining to this litigation and email communications of attorney general personnel. *Id*. at 3. The investigator also interviewed three attorneys in the attorney general's office who were involved in this case. There is no question that much of the information provided to the investigator was privileged, but because the Police Board does not possess a copy of the final Goldsmith Report it cannot intelligently assess whether to waive privilege.[2]

---

[2] The investigator also provided the attorney general with an apparently separate summary of interviews and records reviewed during the investigation. A "detailed report of the results of these interviews and review of records has been provided to the Attorney General's Office as part of this investigation." *Id*. at 3. That information has not been provided to the Police Board.

3

### C. Attorney General's calls for "transparency"

It is difficult to conceive of a situation in which an attorney initiates an investigation of its own client using privileged information obtained from the client during the course of the representation. It is even more difficult to imagine that the attorney would then advocate for public disclosure of the client's privileged information:

> Attorney General Joshua D. Hawley has repeatedly called for the public disclosure of the full Goldsmith report. He has urged the privilege-holders – the last Secretary of the Board of Police Commissioners and Office Jason Stockley – to waive any claim of privilege or confidentiality and to authorize the public disclosure of the full report. The Attorney General agrees that the Goldsmith report contains matters of legitimate public interest, and he believes that complete transparency and accountability would best serve the interests of all parties.

*Response of Intervenor Missouri Attorney General's Office to Plaintiff's Motion to Compel Disclosure of the Full Goldsmith Report*, p. 1 (Doc. 162).

The Police Board is apparently excluded from the attorney general's quest for "complete transparency and accountability," in that the attorney general has not yet seen fit to provide the Police Board with a copy of the full Goldsmith Report.

The attorney-client privilege belongs to, and exists solely for, the benefit of the client. *United States v. Yielding*, 657 F.3d 688, 707 (8th Cir. 2011), *citing Henderson v. United States*, 815 F.2d 1189, 1192 (8th Cir. 1987). The sanctity of the attorney-client relationship is one of the cornerstones of the adversary system. *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L. Ed. 2d 584 (1981). The purpose of the privilege "is to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests

in the observance of law and administration of justice." *Id.* The privilege "rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998), *quoting Trammel v. United States*, 445 U.S. 40, 51, 63 L. Ed. 2d 186, 100 S. Ct. 906 (1980). When the privilege applies "it affords confidential communications between lawyer and client complete protection from disclosure." *Hawkins*, 148 F.3d at 382. Under the attorney-client privilege, " 'confidential communications between an attorney and his client are absolutely privileged from disclosure against the will of the client.' " *Schweppe v. City of Pine Lawn*, 2017 WL 2665027 *3 (E.D.Mo. 2017), *quoting Diversified Indus. v. Meredith*, 572 F.2d 596, 601 (8th Cir. 1977).

The attorney general seemingly recognized the importance of these principles when it filed its initial pleadings in this matter: "The relation between attorney and client is highly fiduciary in its nature and of a very delicate, exacting, and confidential character, requiring a very high degree of fidelity and good faith." *Response of Intervenor Missouri Attorney General's Office to Plaintiff's Motion to Re-Open Discovery, Motion for Show Cause Hearing, and Motion for Sanctions* (Doc. 115-1), p. 4, *citing Laughlin v. Boatmen's Nat. Bank of St. Louis*, 163 S.W.2d 761, 765 (Mo. 1942). The attorney general's pleadings specifically recognize his obligations to the Police Board under Rule 4-1.6 of the Missouri Rules of Professional Conduct. *See* Mo. Sup. Ct. R. 4-1.6(a) and that the obligations raise "serious ethical concerns." *Motion to Intervene of the Missouri Attorney General's Office and Memorandum in Support* (Doc. 115 ), p. 4. "The AGO has an ethical obligation to defend its assertion of privilege and confidentiality in the report on behalf of its former clients." *Id.* at 9.

5

The attorney general apparently believes that it fulfills its ethical obligations with "a very high degree of fidelity and good faith" by announcing its disagreement with the client's legal position before offering an argument on the client's behalf.  The Police Board respectfully disagrees and suggests that the attorney general has violated the very principles it espoused in previous pleadings and which are imposed by the Rules of Professional Conduct.[3]

### D.	Substance of Plaintiff's Motion

As indicated above, the Police Board has not received a copy of the full, final Goldsmith Report, which presumably contains the Board's privileged information.  Therefore, the Board cannot make a principled decision or argument regarding the content.  The attorney general's response pleading, supposedly filed on behalf of the Police Board, ignores this basic fact.  For that reason alone, plaintiff's Motion should be denied.

The Response of Intervenor Missouri Attorney General's Office to Plaintiff's Motion to Compel Disclosure of the Full Goldsmith Report (Doc. 162) does dutifully assert multiple legal arguments in opposition to plaintiff's Motion.   Those arguments are adopted and incorporated herein without the attorney general's editorial comments.

---

[3] The attorney general misrepresents that "[h]e has urged the privilege-holders – the last Secretary of the Board of Police Commissioners and Officer Jason Stockley – to waive any claim of privilege or confidentiality and to authorize the public disclosure of the full report." *Response of Intervenor Missouri Attorney General's Office to Plaintiff's Motion to Compel Disclosure of the Full Goldsmith Report*, p. 1 (Doc. 162).  The last Secretary of the Board, attorney Mark Lawson, denies receipt of any such urging.  Urging a client to waive privilege for an undisclosed document would make no sense in any event.

6

**E.     Conclusion**

Defendants Bettye Battle Turner, Richard Gray, Thomas Irwin and Francis Slay ask the Court to deny Plaintiff's Motion to Compel Production of Unredacted Goldsmith Report (Doc. 160). The attorney-client privilege is a bedrock legal principle that should not be cavalierly dismissed. Here, the attorney general's office unilaterally embarked on an investigation of its own conduct and that of its client, the Police Board, necessarily availing itself of a substantial amount of the Police Board's privileged information. Now the attorney general is complicit in seeking to compromise the Police Board's interests.

The Goldsmith Report concludes that the attorneys with the office of the attorney general who represented the Police Board knew about the subject DNA tests prior to the settlement mediation and also knew that these DNA lab test results were not produced to plaintiff in discovery. Doc. 104-9, p. 8. The only conceivable way that the attorney general's office could have become aware of the DNA reports was if police officers (*i.e.*, the agents of the Police Board) informed those attorneys. The attorney general seeks to divert attention from this basic fact by calling for "transparency" and blaming his predecessor.[4]

---

[4] The attorney general mentions his predecessor Chris Koster four times in his four-page opposition pleading. The Response of Intervenor Missouri Attorney General's Office to Plaintiff's Motion to Compel Disclosure of the Full Goldsmith Report (Doc. 162).

7

        Respectfully submitted,

        JULIAN BUSH
        CITY COUNSELOR

        By: /s/ Michael A. Garvin
        Michael A. Garvin, #39827MO
        Erin K. McGowan, #64020MO
        Andrew D. Wheaton, #65269 MO
        City Hall, Room 314
        St. Louis, MO  63103
        314.622.3361
        Fax: 314.622.4956
        GarvinM@stlouis-mo.gov
        McGowanE@stlouis-mo.gov
        Wheatona@stlouis-mo.gov

## **CERTIFICATE OF SERVICE**

     I hereby certify that on September 13, 2018 the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system on all attorneys of record.

        /s/ Erin K. McGowan