# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| A.B.S., as a surviving daughter of deceased ANTHONY L. SMITH, and a minor, by And through her next friend CHRISTINA WILSON, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.:  4:12-CV-00202 JCH |
| MAYOR FRANCIS SLAY, THOMAS IRWIN, BETTYE BATTLE-TURNER RICHARD GRAY, THE ST. LOUIS CITY BOARD OF POLICE COMMISSIONERS, And JASON STOCKLEY | ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF INTERVENOR ANNIE SMITH'S
REPLY TO OPPOSITION OF
60 (b)(6) MOTION**

NOW COMES Plaintiff-Intervenor Annie Smith, ("Mrs. Smith") by and through her attorneys, Kingdom Litigators, Inc., and the Legal Solution Group, LLC in Reply to the Board of Commissioners' ("the Board"), Intervenor Missouri Attorney General's ("AGO") and Plaintiff A.B.S.'s Response in Opposition to Mrs. Smith's Motion to Set Aside the Order Approving Settlement (ECF #84) pursuant to Fed. R. Civ. Pr. 60(b)(6). In support, Mrs. Smith states as follows:

## INTRODUCTION

Based on their legal experience, the Missouri Attorney General's highest-ranking officers knew that their conduct would be protected by the one-year statute of limitation under Rule 60(c) at the time they calculated the risks to blatantly defy this Court. However, Rule 60(b)(6) was created for this exact class of exceptional circumstances, that demonstrates a greater magnitude of misconduct. Mrs. Smith is correct, when high-ranking officials in the Missouri Attorney General's Office, the Chief of Police, the high-ranking Associate City Counselors, and the Board of Police Commissioners conspire to manipulate the judicial process, it destroys any hope of justice—more so, than a beat cop planting a gun or private law firm destroying documents. Mrs. Smith has never received justice in this extraordinary case, but this Court has full authority to provide relief under Rule 60(b)(6).[1]

---

[1] "In order to be entitled to the extraordinary and exceptional relief afforded under Rule 60(b)(6), the party seeking relief must show that it filed a motion for relief under that Rule, and not under some other section of Rule 60. *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 366 (6th Cir. 1990)."

Contrary to the Board's assertion, *Info-Hold* is markedly distinguishable because the plaintiff never argued that its case fell under 60(b) 6 or the "extraordinary exception." *Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448, 456 (6th Cir. 2008). *Infor-Hold,* 538 F. 3d. 448, 455, 458 (Info–Hold's fraud argument relies on Rule 60(b)(3) as a basis for relief and it did not specify which prong of Rule 60 (b) which Info-Hold alleges for breach of Settlement Agreement). The Sixth Circuit assumed that *Info-Hold* sought relief under Rule 60 (b) 6 for breach of the settlement agreement but rejected the argument because the plaintiff not only "failed to demonstrate by clear and convincing evidence that the Settlement Agreement was breached, but also failed to established that 'the circumstances were so extraordinary or exceptional that relief [was] warranted under Rule 60 (b) 6). *Id*. at 459.

**ARGUMENT**

The U.S. Supreme Court in *Klapprott* already rejected the Board's and AGO's mutually exclusive argument. (Under such circumstances petitioner's prayer for setting aside the default judgment should not be considered only under the excusable neglect, **but also** under the 'other reason' clause of 60(b), to which the one-year limitation provision does not apply. *Klapprott v. United States,* 335 U.S. 601, 614, (1949)). Therefore, the only question before this Court is whether this case is of such "exceptional" or extraordinary circumstances to justify invoking Rule 60(b)(6).

The Board contends that because Mrs. Smith did not conduct discovery, this case is not extraordinary. ECF Doc. 244, p. 9-10. The Board does not cite to any case law, likely because no case exists to support this theory. Moreover, Mrs. Smith was an intervenor, and A.B.S. (as the original party) adequately issued discovery. In fact, the Board was under court order to turn over the DNA report. To suggest that if Mrs. Smith had taken a deposition, *maybe* she would have obtained the DNA report runs afoul the rules of discovery and this Court's authority. ECF Doc. 24, p. 9-10. Accordingly, the Board's contention lacks any merit.

The AGO does not take a position on whether this case is extraordinary. ECF Doc. 115-1, *cf*. Doc. 246 p. 1-3. Instead, the AGO repeats that a motion for fraud must be brought under 60(b)(3), but this argument was already rejected in *Klapprott* and re-affirmed in *Liljeberg*. "Rule [60(b)(6)] does not particularize the factors that justify relief, but we have previously noted that it

3

provides courts with authority "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice," *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64, (1988), citing *Klapprott v. United States,* 335 U.S. 601, 614–615, 69 (1949), while also cautioning that it should only be applied in "extraordinary circumstances." To determine whether a case reaches the threshold of extraordinary, "[i]t is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 864, (1988).

1. **Mrs. Smith has suffered enough injustice.**

Mrs. Smith lost her son, and the Chief of the Eastern Region for the Missouri Attorney General's Office hid the DNA report so that she was forced to make a handicapped decision to settle. To this very day, the AGO blames the Board; the Board blames the AGO and Mr. Watkins; and now, the AGO and A.B.S. blame Mrs. Smith's attorney for not taking a deposition for the DNA report. (ECF 244 Doc. p. 9-10). The Board ignores the fact that the Court had already ordered the DNA to be turned over. The truth is, this case was a cinematic conspiracy involving trusted officials in high offices. Mrs. Smith deserves closure and justice. By withholding the DNA report, Mrs. Smith was robbed of her decision to either civilly prosecute the man responsible for her son's

4

death or walk away.[2] She made her decision based on whether she had the DNA report, which she could use to prove, by clear and convincing evidence, that her son was innocent. The only way to make Mrs. Smith whole again is to return her to a position from which she can make an informed decision.

Briefly turning to A.B.S.'s concern about returning the $900,000, this too would be an injustice to Mrs. Smith.  The Second Circuit explained it best in holding:

> (I)f the defendant by willful falsehood has cozened the plaintiff into risking his property upon a bargain, which, upon the information given by the defendant, would have been profitable, a remedy which merely seeks to place the plaintiff back in the position he was in before seems hardly adequate. The plaintiff might well be given the value of the expected bargain. A willful fraud should cost as much as a broken promise. If the cheat can anticipate that the worst that can happen is that he shall be called upon to pay back his profit upon the trade, he may be encouraged to defraud.
> *Slotkin v. Citizens Cas. Co. of New York,* 614 F.2d 301, 312 (2d Cir. 1979).

Neither Mrs. Smith nor A.B.S. should be required to suffer any further injustice for a fraud committed upon them. *Roth v. La Societe Anonyme Turbomeca France*, 120 S.W.3d 764, 774 (Mo.

---

[2] The Board contends that the findings in a criminal court establish that the DNA report does not prove that Jason Stockley planted a gun. ECF. Doc. 244, p. 8-9. However, the standard in a criminal proceeding is beyond a reasonable doubt, which is a higher standard than the clear and convincing standard of civil proceedings. "Acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt." *United States v. Watts*, 519 U.S. 148, 155, (U.S. 1997). Moreover, it is well established that Courts have never required the "beyond a reasonable doubt" standard to be applied in a civil case. *California ex rel. Cooper v. Mitchell Brothers Santa Ana Theater,* 454 U.S. 90, 93, (U.S. 1981). The Board's argument is without merit.

Ct. App. 2003) ("Because the Roths had secured some recovery, they should not be forced to forfeit it at the risk of recovering nothing. Mo. Sup. Ct. Rule 61.01 surely was not intended to punish a party who has already suffered prejudice while potentially rewarding the non-compliant party's fraud"). Moreover, this Court could, and probably should, fashion a remedy to sanction the Board three times the amount of the initial settlement and offset it by what was already paid. In any event, neither the Board nor A.B.S. provide any case law to support the notion that a victim of fraud must return a nominal item gained; conversely, the Court is free to fashion its own remedy.

> 2. **The Board's Attorneys Will Calculate the Risks of Defying a Federal Court Again in Cases that are "as bad as it could get."**

The Board calculated the risks of withholding the DNA report and facing sanctions, disbarment, and civil contempt, but these risks did not outweigh paying $7.1 million.[3] According to Board minutes, the Board's general counsel, Mark Lawson, stated, "this case is as bad as it could get right now and that someone outside of the realm may not know the full implications." The decision to defy this Court was a calculated risk by sophisticated attorneys. The Board and its attorneys fully understood that the DNA report could not be disclosed until after at least one year to avoid a 60(b)(3) motion. Unless this Court imposes a $7.1 million sanction or sets aside the

---

[3] Jason Stockley planted the gun and the DNA report clearly and convincingly proved the same. Q. Okay. Did any of the experts tell you that— you could draw that conclusion? A. -- *I was told off the record a long time ago that -- so much of [Stockley's] DNA was on that gun, he [Stockley] would -- he would almost have to sneeze on it to get that much DNA on the gun*. (Ex. A pg. 221).

6

judgment, the Board (now the City and all the same lawyers) will repeat this conduct because it was successful. Mrs. Smith urges this Court to set aside the order approving settlement or to impose sanctions commensurate with the Board's evaluation of this case, which will restore the integrity of the judicial process. Again, the Board, Chief of Police, and its attorneys calculated and accepted the risks of contempt; it will repeat this conduct.

> 3. **"When the Missouri Attorney General, the Chief of Police, High Ranking City Counselors, and a Police Board Conspire to Defy A Court, the Integrity of Judicial Process is Compromised."**

On April 18, 2019, undersigned counsel requested a telephone conference because counsel realized Mrs. Smith legitimately did not trust this judicial process, and undersigned counsel found her fear was completely justified. (ECF Doc. 226). A major factor contributing to Mrs. Smith's trepidation was about *the who*, not the what. Meaning, that when high-ranking officials in the Missouri Attorney General's Office, the Chief of Police, the high-ranking Associate City Counselors and Board of Police Commissioners conspire to manipulate the judicial process, it destroys any hope of justice—more so, than a beat cop planting a gun or private law firm destroying documents. This makes clear that the public trust in the integrity of the judicial process is compromised. In its ruling on a 60(b) motion, the Fifth Circuit noted:

> The Turners' complaint alleges facts that make it plausible that Chopin and Cenac conspired with the district judge, and that Chopin and the judge—both officers of the court—acted in a manner calculated to prevent this court from undertaking

7

meaningful appellate review. This court, like the public at large, relies on the integrity and honesty of the district judges. We presume judges to be honest.

*Turner v. Pleasant*, 663 F.3d 770, 777 (5th Cir. 2011), *as revised* (Dec. 16, 2011).

The public's continued presence in this case signifies that the impact of this cover-up reaches far beyond Mrs. Smith. The City of St. Louis has a strong history of shooting unarmed black men with impunity. For the Missouri Attorney General and the Board to complicity conceal a DNA report, leaves the public praying to the judicial branch for justice. Setting aside the Settlement Order sends a very clear and reassuring message to the public that no one is above the law, including the Missouri Attorney General's Office. Therefore, this factor weighs heavily in favor of granting Mrs. Smith's 60(b)(6) motion.

## CONCLUSION

Accordingly, and for the reasons contained herein, Plaintiff Intervenor Annie Smith prays this Court grant her 60(b)(6) motion and place the parties back in mediation.

Dated: 7.25.2019

Respectfully submitted,

/s/ Daniel A. Dailey (*pro hac vice*)
*Chief Federal Litigation Counsel*

KINGDOM LITIGATORS, INC.
A PUBLIC INTEREST LAW FIRM,
3131 McKinney Blvd. Ste. 600,

8

Dallas, TX 75204
P:(214) 422-9350
F:(312) 277-3370
ARDC#: 6312616
ddailey@kingomlitigators.com

**THE LEGAL SOLUTION GROUP**
**Jermaine Wooten #59338**
St. Louis Office, MO
10250 Halls Ferry Road
St. Louis, MO  63136
314-736-5770
314-736-5772 (Fax)
jwooten@lsgstl.com

9

## CERTIFICATE OF SERVICE

  I hereby certify that on July 25, 2019, the above Memorandum was served on parties of record using the court's ECF filing system.

/s/ <u>Daniel A. Dailey</u>