UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| A.B.S., as surviving daughter of deceased ANTHONY L. SMITH, and a minor, by and through her next friend CHRISTINA WILSON, <br><br>　　　　Plaintiff, <br><br>　vs. <br><br>BOARD OF POLICE COMMISSIONERS, et al., <br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　Case No. 4:12CV202 JCH<br>)<br>)<br>)<br>)<br>) |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on Plaintiff A.B.S.'s Motion to Enforce Settlement, filed April 24, 2019.  (ECF No. 228).  The motion is fully briefed and ready for disposition.

By way of background, this lawsuit was initiated in 2012, and involves claims brought pursuant to 42 U.S.C. § 1983 and the Missouri Wrongful Death Statute against former City of St. Louis Police Officer Jason Stockley ("Stockley"), and the St. Louis Board of Police Commissioners (the "Board").  Plaintiff A.B.S., the minor daughter of Anthony Lamar Smith ("Decedent"), alleged that Stockley used excessive force when he fatally wounded her father following a police pursuit on December 20, 2011.  Following the shooting, a Taurus revolver recovered from the vehicle driven by Decedent was seized as evidence, and samples were taken for DNA testing.  Decedent's mother, Annie Smith ("Smith"), was granted permission to intervene in the underlying action in March, 2013.[1]

---

[1] Immediately upon being granted leave to intervene, Smith asked that the Court order a paternity test on A.B.S.

The parties mediated the underlying action in June, 2013, and settled all claims.  A.B.S. and Smith each took a share of the settlement proceeds.

On December 18, 2017, A.B.S. filed a Motion to Re-Open Discovery, Motion for Show Cause Hearing, and Motion for Sanctions (the "motion").  A.B.S. asserted there were intentional abuses of the federal discovery process by Defendants and their counsel, with respect to the lab results on the DNA recovered from the revolver.  A.B.S. did not ask that the underlying lawsuit and settlement be reopened; instead, she requested sanctions against Defendants and/or their counsel for their abuse of the discovery process.

The Court entered a scheduling order with respect to the motion on April 9, 2018, ordering referral to alternative dispute resolution ("ADR") from August 1, 2018, to September 14, 2018.  The Court further ordered supplemental briefing on the motion between August 24, 2018, and September 24, 2018, and set the matter for a hearing on October 9, 2018.

On May 8, 2018, Smith's current counsel, Jermaine Wooten of the Legal Solution Group, LLC, entered his appearance for Smith.[2]  On October 16, 2018, A.B.S.'s attorney filed a notice of settlement.  On December 6, 2018, however, A.B.S. and Defendants (collectively "Movants") filed a Joint Motion for Approval of Settlement, Entry of Judgment and Sanctions.  In their joint motion, Movants asserted Smith did not participate in pre-settlement discovery or mediation in the underlying case, nor was she a party to the Motion to Re-Open Discovery, Motion for Show Cause Hearing and Motion for Sanctions.  Movants further maintained that although he received all filings in this matter subsequent to his entry of appearance on May 8, 2018, Mr. Wooten did not participate in the discovery process or mediation regarding the motion.  Only after Movants

---

The Court granted Smith's request, and a paternity test was performed, the results of which showed A.B.S. to be the biological daughter of Decedent.

2 Smith previously was represented by James W. Schottel, Jr., who has never withdrawn as her attorney.  Smith also is represented by Daniel A. Dailey, of Kingdom Litigators, Inc.

filed the notice of settlement on October 16, 2018, did Mr. Wooten contact the City Counselor's Office, requesting that a portion of the settlement proceeds be allocated to Smith. Movants requested that Smith's claim to the settlement proceeds, to the extent she had any, be extinguished as a sanction for her failure to participate in the discovery and ADR process. Movants further requested that Smith be barred from filing her own claim with respect to the alleged discovery violation.

During a hearing held on January 8, 2019, the Court ruled that Smith's intervention as of right ended when the underlying wrongful death litigation was settled and terminated. The Court thus held Smith was not automatically entitled to a portion of the settlement proceeds. On January 9, 2019, the Court refused to approve Movants' proposed settlement, as the Court declined to extinguish any potential claim Smith might have on her own behalf with respect to the alleged discovery violation. The Court ordered the parties to submit a status report by February 18, 2019, indicating their progress in determining the manner in which the case should move forward, either through settlement or otherwise.

As ordered, the parties submitted a Joint Status Report on February 18, 2019. At that time, the parties informed the Court they had been unsuccessful in their efforts to settle the matter, and thus requested that the case be placed back on the Court's regular docket. The parties further requested that Smith be granted twenty-one days to file her own claim regarding the discovery violation.

On February 27, 2019, the Court entered a revised scheduling order in this matter, granting Smith until March 15, 2019, within which to seek leave to intervene in this matter as a Plaintiff, and/or to file any motion she may have relative to any claim(s) she may assert against

any current or former party.  The Court further set deadlines for discovery, ADR, and supplemental briefing.

On March 15, 2019, Mr. Wooten filed a notice of settlement, stating the parties had agreed in principle to settle the case, and were in the process of preparing and finalizing the settlement documents.  On April 24, 2019, however, A.B.S. filed the instant Motion to Enforce Settlement, in which she claims that despite agreeing to the express terms of the settlement, Smith refused to execute the Settlement Agreement.  A.B.S. asks that the Court approve the proposed settlement, the exact text of which Smith allegedly previously approved.[3]

## **DISCUSSION**

Settlement agreements are favored by the courts, and this Court has the inherent power to enforce a settlement agreement entered into by the parties in a pending case.  *Caleshu v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 737 F.Supp. 1070, 1086 (E.D. Mo. 1990), *aff'd*, 985 F.2d 564 (8th Cir. 1991).  Settlement agreements are governed by basic contract principles, and in order for a settlement agreement to be enforceable, the parties must have reached agreement on the essential terms of the deal.  *Sheng v. Starkey Labs, Inc.*, 117 F.3d 1081, 1083 (8th Cir. 1997). "Even if the parties have left some details for counsel to work out through further negotiation, a legal, valid settlement agreement still exists." *McClaskey v. La Plata R-II School Dist.*, 2006 WL 3803686, at *8 (E.D. Mo. Nov. 7, 2006) (citing *Sheng*, 117 F.3d at 1083).  "The party requesting enforcement of a settlement agreement has the burden of proving its claim for relief by clear, convincing, and satisfactory evidence." *Id.* (citing *Kenner v. City of Richmond Heights,*

---

[3] On May 17, 2019, Smith filed a Motion to Intervene, in which she requested leave to intervene in A.B.S.'s Motion for Sanctions.  She further requested that she be permitted to represent her own interests, as she sought both monetary sanctions and the setting aside of the 2013 judgment.  That same day, Smith filed a Motion pursuant to Fed. R. Civ. P. 60(b)(6), requesting that the Court set aside the 2013 order approving settlement.  The Court denied Smith's motions in an Order entered August 12, 2019.

*Mo.*, 356 F.Supp.2d 1002, 1008 (E.D. Mo. 2005), *aff'd*, 2006 WL 2620645 (8th Cir. Sep. 14, 2006)).

> Once parties have settled a dispute and have agreed to settlement terms, the parties cannot rescind it. In order to determine whether the parties intended to be bound by the settlement prior to the execution of the written documents, a court must consider the course of negotiations, agreement on material terms, whether the parties described the settlement as such, and whether any existing disagreements were merely technicalities.

*Caleshu*, 737 F.Supp. at 1086 (internal citations omitted).

Upon consideration, the Court finds A.B.S. has met her burden of proving the existence of a settlement agreement. A.B.S. attaches to her motion an email thread from March 15, 2019. (ECF No. 228-1). The thread begins with Mr. Michael Schwade, attorney for A.B.S., addressing Mr. Wooten and Mr. Dailey at 2:22 p.m. as follows:

> I write in response to your letter of March 13, 2019. I have spoken with counsel for the AGO (Attorney General's Office) and the City. Consistent with our telephone conversation this morning, propose the following counteroffer to settle this matter. Annie Smith shall receive the sum of $80,000 to resolve her claims against the AGO and City of St. Louis arising out of the shooting death of her son by former officer Jason Stockley. Half of this sum ($40,000) shall be paid to Annie Smith from the prior settlement reached between Plaintiff and the Defendants, which the City and the AGO have confirmed remains on the table. The remaining $40,000 shall be paid to Annie Smith by the AGO. The unredacted Goldsmith Report shall be released upon the execution and approval (if any) of the settlement. Please discuss this offer with your client and advise whether we have an agreement. I have copied counsel for the City and the State on this email.

(*Id.*, P. 3). Mr. Wooten responded that he had spoken to Smith and the parties had an agreement "pursuant to the terms discussed earlier." (*Id.*, P. 2). Not satisfied, Mr. Schwade asked, "For the avoidance of doubt as to the meaning of 'terms discussed earlier', is your client in agreement per the terms of my 2:22 pm email embedded below?", to which Mr. Wooten replied, "Yes." (*Id.*).

As noted above, it was then Mr. Wooten who informed the Court on March 15, 2019, that the parties had agreed in principle to settle the matter.  (ECF No. 222).

Mr. Schwade then prepared a draft of the settlement agreement, and circulated it to the attorneys.  When Mr. Schwade asked if anyone had any comments or revisions, Mr. Wooten responded, "We are fine with the settlement agreement."  (ECF No. 228-2, P. 2).  Between March 27, 2019, and April 12, 2019, the next friend of A.B.S., the City, and the AGO executed the settlement agreement.  (*See* ECF No. 228-3).

Despite the foregoing, when presented with the settlement agreement Smith refused to sign.  According to A.B.S., Smith again was questioning the paternity of A.B.S., and further was recalcitrant to sign the agreement because she disagreed with the distribution of settlement funds.  (*See* ECF No. 228, P. 4).  A.B.S. maintains that when her attorney indicated Smith's actions were unacceptable and that he would file a Motion to Enforce Settlement, "Counsel for Ms. Smith stated he understood and did not disagree."  (*Id.*).  Counsel for Smith spoke with Smith, and even tried to enlist the Court's assistance, but was unable to secure his client's signature on the settlement agreement.

In her response to A.B.S.'s motion, Smith does not deny any of the foregoing; rather, she confirms that the parties, "inclusive of Mrs. Smith, exchanged emails and phone calls relative to settlement before reaching an agreement in principle and communicating the same to the Court on March 15, 2019."  (*See* ECF No. 236, P. 3).  Smith does not claim her attorneys lacked the authority to settle on her behalf during the negotiations.  Instead, she simply states that upon seeing the terms of the settlement, Smith declined to sign the settlement documents.[4]

---

4 Smith asserts that given the contentious history between A.B.S. and Smith, the latter "questions whether Plaintiff A.B.S.'s agreement to the settlement terms represent [Smith's] best interest."  (ECF No. 236, P. 6).  Such a claim is nonsensical, given that Smith's own attorneys represented her interests during the settlement negotiations.

"Even where one party 'may now be unhappy with some or all of the terms…the fact that a party decides after the fact that a contract is not to its liking does not provide a reason to support that a contract was not in fact formed or to release that party from its obligation.'" *Washington v. Blunt*, 2011 WL 2709833, at *2 (W.D. Mo. Jul. 12, 2011) (quoting *Visiting Nurse Ass'n, St. Louis v. VNAHealthcare, Inc.*, 347 F.3d 1052, 1055 (8th Cir. 2003)). Here, the Court concludes that the course of the settlement negotiations, the agreement of material terms, the parties' acknowledgement of the settlement, and Smith's submission of a pass for settlement document, all indicate that a valid settlement agreement was reached. *Caleshu*, 737 F.Supp. at 1086. Smith cannot now rescind the settlement agreement, and so the Court will grant A.B.S.'s Motion to Enforce Settlement.[5] (*Id.*).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that A.B.S.'s Motion to Enforce Settlement (ECF No. 228) is **GRANTED**. The Court finds the Settlement Agreement, as set forth in Exhibit 3 to A.B.S.'s motion (ECF No. 228-3), is in the best interests of the minor, A.B.S.

**IT IS FURTHER ORDERED** that the Settlement Agreement (ECF No. 228-3) shall be deemed a Final Judgment as of this date. The Court shall retain jurisdiction over this matter for the purpose of enforcing the Settlement Agreement.

Dated this \_\_\_13th\_\_\_ Day of September, 2019.

\s\ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

5 The Court declines to assess attorneys' fees against Smith at this time.